Argued and submitted April 7, decision of the Court of Appeals reversed in part and affirmed in part, judgment of the circuit court reversed and case remanded to circuit court for new trial September 29, 1987

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# DIANE HANSEN,
*Petitioner on Review.*

## (TC 84 1128; CA A34714; SC S33537)

743 P2d 157

Robert J. McCrea, Eugene, argued the cause and filed the petition for petitioner on review.

Terry Ann Leggert, Assistant Attorney General, Salem, argued the cause for respondent on review.

LENT, J.

**LENT, J.**

Defendant, a high school teacher, was indicted for sodomy in the third degree, ORS 163.385, which prohibits "deviate sexual intercourse" with a person "under 16 years of age." At trial the state introduced evidence that defendant had engaged in such intercourse with one of her students on December 4, 1983, the day before the student's 16th birthday. The jury found her guilty, and she was sentenced to a prison term of five years. The Court of Appeals affirmed. *State v. Hansen,* 82 Or App 178, 728 P2d 538 (1986).

We allowed defendant's petition for review, which raises three issues: (1) Does the common-law method of calculating age, by which a person attains a given age on the day prior to that person's birthday, apply to ORS 163.385? (2) Is expert testimony concerning methods that a person who sexually abuses children will use "to get close to the victim" admissible? (3) Where the state does not introduce into evidence communications between a child and the child's psychotherapist concerning the child's relationship with a defendant accused of sexually abusing the child, are the communications protected against disclosure by the psychotherapist-patient privilege, OEC 504, notwithstanding ORS 418.775(1), which provides that the psychotherapist-patient privilege, among others, "shall not be a ground for excluding evidence regarding a child's abuse, or the cause thereof"? Because we answer the second and third questions in the negative, we reverse and remand for a new trial.

I.

Defendant contends that the circuit court should have granted her motion for judgment of acquittal because the student was, under the common law, 16 years of age on the day the intercourse allegedly occurred. In calculating the passage of time, the common law treated each day as an indivisible unit and excluded the initial day from the computation. *Nelson v. Sandkamp,* 34 NW2d 640, 642 (Minn 1948). This remains the method in Oregon for determining whether such things as filing deadlines have been met. *See, e.g., Beardsley v. Hill,* 219 Or 440, 348 P2d 58 (1959); ORS 174.120; ORCP 10. With respect to age, however, the common-law calculation included the day of birth. *Nichols v. Ramsel,* 2 Mod 280, 86

Eng Rep 1072 (KB 1677); *Herbert v. Turball,* 1 Keble 590, 83 Eng Rep 1129 (KB 1663), *discussed in* Annot., 5 ALR2d 1143, 1145-46 (1949); *see also Nelson v. Sandkamp, supra,* 34 NW2d at 642; *Commonwealth v. Howe,* 35 Pa Super 554 (1908). The effect of this exception to the general rule was that a person reached a given age in years at the first moment of the day before the person's birthday. Thus, under the common-law method, the student, who was born on December 5, 1967, became 16 at the beginning of December 4, 1983, the day the intercourse was alleged to have taken place. If the common-law method applies, defendant was entitled to a judgment of acquittal.

The "common law of England" was adopted prior to statehood or official territorial status by Oregon's provisional government. Act of July 5, 1843, Art 12, *reprinted in* Harris, *History of the Oregon Code,* 1 Or L Rev 129, 135 (1922); Act of June 27, 1844, Art III, § 1, *reprinted in id.* at 138. The common law, in the sense of an evolving body of law, continues in force insofar as it is not in conflict with legislation or constitutional provisions. *See* Or Const, Art XVIII, § 7; *Peery v. Fletcher,* 93 Or 43, 52-54, 182 P 143 (1919). No Oregon statute has expressly abrogated the common-law method for calculating age, but the legislature has provided that ORS 163.385 is applicable to conduct with persons "under 16 years of age." Therefore, whether the student was 16 at the time the act was alleged to have taken place is more properly analyzed as a question of legislative intent. The common law is not irrelevant to that question, but it is also not dispositive. *Cf. Commonwealth v. Howe, supra,* (reasonable to assume that, in fixing age of consent at 16, the legislature intended to follow common-law method of calculation).

ORS 163.385 was enacted in 1971 as part of a general revision of the Oregon criminal laws that was proposed by the Oregon Criminal Law Revision Commission. Or Laws 1971, ch 743, § 112. ORS 163.385 was adapted in part from section 130.40 of the New York Revised Penal Law. Proposed Oregon Criminal Code 116, 118, § 112, Commentary (1970). A related section of the proposed code, section 105 (enacted as ORS 163.315), provided that a person "[u]nder 18 years of age" was incapable of consenting to a sexual act. The commentary to that section, which was also adapted from section 130 of the New York Revised Penal Law, stated, "A person is under 18

years of age if he has not reached his 18th birthday, that is, up to and including the day before his 18th birthday." Given that New York law was the source of section 105, the commentary may have been based on a then recent decision of New York's highest court, which held that the common-law method of calculating age was inapplicable to legislation defining the New York Family Court's jurisdiction over juveniles. *People v. Stevenson,* 17 NY 2d 682, 269 NYS 2d 458, 216 NE2d 615 (1966), *rev'g and adopting dissent in* 23 AD2d 472, 262 NYS 2d 238 (1965) (Christ, J., dissenting). This decision was thought to apply to the statute on which section 105 was based. *See* McKinney's Consolidated Laws of New York Annotated, Penal Law § 130.05, Practice Commentary at 452 (1975 ed).

Unofficial commentary to a separate, albeit related, provision of a code is a thin reed on which to base the interpretation of a statute. Nevertheless, we are convinced that the interpretation is correct because it accords both with the popular method for computing age and with the method by which the passage of time is computed in other areas of the law. *See, e.g., Beardsley v. Hill, supra;* ORS 174.120; ORCP 10. Moreover, so far as we are able to ascertain, no reported decision of any Oregon court has ever used the common-law method for calculating age. We think it extremely unlikely that the legislature had this method of calculation in mind when it enacted ORS 163.385.[1]

For these reasons, we hold that the student was "under 16 years of age" on December 4, 1983. The circuit court properly denied defendant's motion for judgment of acquittal.

## II.

The student testified on direct examination by the state and on cross-examination that she had for several months initially denied having sexual relations with defendant. Because this testimony called into question the student's credibility, the state presented the expert testimony of

---

[1] The common-law method for calculating age has long been criticized as contrary to reason and common sense. *See* Annot., 5 ALR2d 1143, 1145-46 (1949); 1 Minor's Institute 472-73 (1876). Only recently, however, have courts begun to reject the rule primarily on this ground rather than on the ground of statutory interpretation. *See United States v. Tucker,* 407 A2d 1067 (DC 1979); *State v. Stangel,* 284 NW2d 4 (Minn 1979). Because our decision is based on the latter ground, we do not consider the former.

a Detective Robson regarding his experiences investigating other child sexual abuse cases. Detective Robson testified over objection that it was normal for child victims of sexual abuse to deny that the abuse occurred because they felt guilty and embarrassed and, where they had an emotional tie to the abuser, because they wished to protect the abuser. On review, defendant does not challenge the admission of this testimony in general, but she does object to the following question and answer given in the course of the testimony:

"Q. [By the prosecutor] Now, do you find certain common factors when you work with both the victims and offenders in these non-family cases? Do you find certain factors or methods that an offender will use to get close to the victim?

"* * * * *

"A. [By Detective Robson] Yes, there are certain techniques. It's usually what I term a 'grooming process.' Usually, there's an extensive amount of testing that goes on both physically and psychologically. There is usually a lot of gift giving, a lot of affection, praising, rewards, anything to make the individual more comfortable even to the extent of dealing with lots of people surrounding this particular person, just getting into a comfortable role; in other words, feeling comfortable and being close to an individual. Yes, they often establish some emotional dependency."

The precise basis of defendant's objection is not clear but appears to be that the expert testimony concerning the specific techniques that a child abuser "will use to get close to the victim" was not of assistance to the jury because any probative value the testimony might have had was outweighed by the danger of unfair prejudice to her.[2] Other evidence presented by the state tended to show that defendant had done some of the things described by Detective Robson as "grooming."

OEC 702 provides:

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

----

[2] In the Court of Appeals, defendant also challenged Detective Robson's qualifications as an expert. This challenge was not renewed in defendant's petition for review.

In *State v. Brown,* 297 Or 404, 687 P2d 751 (1984), this court explained that the admissibility of expert testimony must be evaluated in essentially the same manner as other evidence, with particular reference under OEC 401 to the testimony's relevance and under OEC 403 to the danger that the testimony might unfairly prejudice the opposing party. *Id.* at 409, 415-18.

The state, relying on *State v. Middleton,* 294 Or 427, 657 P2d 1215 (1983), contends that the testimony was admissible as part of its effort to explain the student's initial denial that she had sexual relations with defendant. *Middleton* involved the rape of a 14-year-old child by her father. The child reported the rape to several persons, later denied that the rape had occurred, but then testified at trial that the rape had occurred. Two experts testified over objection that the child's "superficially bizarre behavior" was typical of the behavior of children who had been raped by family members. This court held that the expert testimony was admissible under OEC 702. Specifically, the court held that "it is not error to allow testimony describing the reaction of the typical child victim of familial sexual abuse and whether a testifying victim impeached by her prior inconsistent statement reacted in the typical manner when she made that inconsistent statement." 294 Or at 438. The rationale for the holding was stated as follows:

> "[I]n this instance we are concerned with a child who states she has been the victim of sexual abuse by a member of her family. The experts testified that in this situation the young victim often feels guilty about testifying against someone she loves and wonders if she is doing the right thing in so testifying. It would be useful to the jury to know that not just this victim but many child victims are ambivalent about the forcefulness with which they want to pursue the complaint, and it is not uncommon for them to deny the act ever happened. Explaining this superficially bizarre behavior by identifying its emotional antecedents could help the jury better assess the witness's credibility."

294 Or at 435-36.

The testimony to which defendant objects did nothing to explain the student's initial denial of sexual relations with defendant. Detective Robson testified that, in his experience, sexually abused children are reluctant to admit the

abuse because, in addition to feelings of guilt and embarrassment, they are often emotionally dependent on the adult abuser. That much of his testimony arguably is admissible under *Middleton,* although *Middleton* involved intra-family abuse, because it might assist the trier of fact to understand the student's initial denial. But the specific techniques used by some child abusers "to get close to the victim," which may result in the child's emotional dependence on the abuser, are irrelevant to the effect the dependence has on the child's willingness to implicate the abuser. It is the emotional dependence, not the specific acts that produce it, that helps to explain the child's behavior. *Middleton* does not support the admission of this testimony.

The state has not argued that the testimony to which defendant objected was admissible on any other ground than to explain the student's initial denial. The only other possible ground would be as evidence that defendant had sexual relations with the student. But the relevance of the testimony for this purpose is practically nil. Detective Robson testified to what might be described as a "profile" of a nonviolent child abuser who is unrelated to the child: physical and psychological "testing" of the child, giving gifts, showing affection, praising, making the child feel comfortable in the abuser's presence, etc. That child abusers use these techniques has no bearing on whether a person who does these things is a child abuser. For example, it is probably accurate to say that the vast majority of persons who abuse children sexually are male. This says little, if anything, however, about whether a particular male defendant has sexually abused a child. *See State v. Petrich,* 101 Wash 2d 566, 683 P2d 173, 180 (1984) (potential for prejudice outweighed probative value of expert testimony that 85-90% of child molesters know their victims, where defendant was alleged victim's grandfather); *see also* McCord, *Expert Psychological Testimony about Child Complainants in Sexual Abuse Prosecutions,* 77 J Crim L & Criminology 1, 17 n 105 (1986) (citing cases). Given the lack of probative value of Detective Robson's testimony on this point, the danger of unfair prejudice to defendant from the unwarranted inference that, because defendant engaged in acts that sexual child abusers engage in, she, too, is a sexual child abuser is simply too great. It was error for the circuit court to admit this portion of Detective Robson's testimony over defendant's objection.

## III.

■     Prior to trial, defendant requested an omnibus hearing on the applicability of the psychotherapist-patient privilege, OEC 504, to communications between the student and her private psychologist concerning her relationship with defendant. The prosecution and defense stipulated to the following: the psychologist would invoke the privilege on behalf of the student; the communications were for treatment; the student's relationship with defendant had been discussed; and the student had initially told the psychologist that she had not had a sexual relationship with defendant. Defendant contended that the privilege was inapplicable to judicial proceedings involving child abuse, citing ORS 418.775(1).[3] ORS 418.775(1) provides:

> "In the case of abuse of a child, * * * the psychotherapist-patient privilege * * * shall not be a ground for excluding evidence regarding a child's abuse, or the cause thereof, in any judicial proceeding resulting from a report made pursuant to ORS 418.750."

The circuit court ruled that the communications were protected by the privilege because it held that the exception contained in ORS 418.775(1) applies only to evidence of abuse, not to evidence that the abuse did not occur. The court ordered that the psychologist's records were not subject to inspection and that "no testimony of the psychologist regarding statements of the child that no abuse occurred between her and the defendant will be allowed."[4]

The Court of Appeals affirmed on a different ground without reaching the ground relied upon by the circuit court. It held that ORS 418.775(1) did not apply because defendant did not establish that her prosecution resulted from a report

---

[3] Defendant also contended in the circuit court and in the Court of Appeals that the privilege was inapplicable because the psychologist, with the student's permission, had disclosed details of the alleged abuse to a police officer. *See* OEC 511. Neither court addressed that contention, and defendant does not raise it in her petition for review. Because we hold that ORS 418.775(1) makes the privilege inapplicable in any case, we do not decide whether the student waived the privilege by disclosure.

[4] In the Court of Appeals, defendant also challenged the circuit court's ruling that the student's school records were not subject to inspection and that evidence concerning the contents of the records was inadmissible. The Court of Appeals affirmed this ruling, but defendant has not raised the issue in her petition for review. Accordingly, we express no opinion on the Court of Appeals' disposition of this issue.

made pursuant to ORS 418.750. 82 Or App at 186-87.[5] This theory was not urged by the state, which at oral argument in this court contended that the prosecution *did* result from a report made pursuant to ORS 418.750. The Court of Appeals' resolution of the issue may well have been correct. The issue, however, is of some complexity; given that neither party argues that the prosecution did not result from a report made pursuant to ORS 418.750, the better course is to defer decision on this issue until it is appropriately presented in an adversarial context. Therefore, we shall assume that this case is a judicial proceeding to which ORS 418.775(1) applies.

ORS 418.775(1) is a part of the statutes dealing with the reporting of child abuse. ORS 418.740 to 418.775. The official legislative policy behind the reporting statutes is stated in ORS 418.745:

> "The Legislative Assembly finds that for the purpose of facilitating the use of protective social services to prevent further abuse, safeguard and enhance the welfare of abused children, and preserve family life when consistent with the protection of the child by stabilizing the family and improving parental capacity, it is necessary and in the public interest to require mandatory reports and investigations of abuse of children."

The state points to this policy in arguing that when the legislature stated in ORS 418.775(1) that "the psychotherapist-patient privilege * * * shall not be a ground for excluding evidence regarding a child's abuse, or the cause thereof," it meant the exception to apply only to evidence that would tend to prove that the abuse occurred or that would tend to prove that a criminal defendant was the cause thereof. The state contends that evidence that would tend to exculpate the defendant would not further the policy stated in ORS 418.745 to "prevent further abuse [and] safeguard and enhance the welfare of abused children." The state also contends that limiting

---

[5] ORS 418.750 provides:

"Any public or private official having reasonable cause to believe that any child with whom the official comes in contact in an official capacity has suffered abuse * * * shall report or cause a report to be made in the manner required in ORS 418.755. * * *"

ORS 418.755 requires an immediate report of the suspected abuse to the Children's Services Division or to a "law enforcement agency within the county where the person making the report is at the time of the contact." The Children's Services Division or the law enforcement agency must then notify the other.

the exception stated in ORS 418.775(1) to proof of abuse is consistent with the purpose of the psychotherapist-patient privilege, which is to assist the treatment of mental and emotional problems, *see State v. Miller,* 300 Or 203, 208-09, 709 P2d 225 (1985), because proof of abuse furthers the treatment of the child, while proof that the abuse did not occur would not.

We cannot accept the state's arguments. There is no question that the exception to the psychotherapist-patient privilege, as well as the exceptions to the other privileges listed in ORS 418.775(1), were intended to assist in the proof of child abuse and the cause thereof, both in criminal and other proceedings. *State v. Suttles,* 287 Or 15, 21-32, 597 P2d 786 (1979). But the proof and cause of child abuse is not limited to proving that any particular person that the state chooses to accuse of child abuse committed the abuse charged. It would hardly assist the child to convict an innocent person of child abuse while the actual perpetrator remained free to continue abusing the child. One might also question whether it would be helpful to the child to convict an innocent person, perhaps a close family member, of child abuse if the abuse in fact never occurred.

The policy stated in ORS 418.745 is to "require mandatory reports and *investigations* of abuse of children." (Emphasis added.) We infer from this that the legislature intended to make a limited exception to the psychotherapist-patient privilege in order to assist in a search for the truth regarding an instance of possible child abuse, not in order to prove a particular result. The state has pointed to nothing, and we have been unable to find anything, in the legislative history of the child abuse reporting laws from which we could infer that in addition to facilitating proof of child abuse the legislature intended to limit the exception so as to prevent a person accused of abuse from introducing exculpatory evidence.[6] The circuit court erred in ruling that the communica-

---

[6] We note, without meaning to suggest the answer we would give were the issues before us, that the state's interpretation of ORS 418.775(1) might raise a number of procedural and constitutional difficulties. An obvious procedural difficulty would be in attempting to ascertain, before admission, whether the evidence is in fact evidence tending to prove abuse or evidence tending to prove the absence of abuse. Evidentiary privileges, unlike other evidentiary rules, apply to the determination whether the privilege exists. OEC 104(1). Constitutional difficulties might include the confronta-

tions between the student and her psychologist regarding the student's relationship with defendant were protected by the psychotherapist-patient privilege.

## IV.

Having decided that it was error for the circuit court to permit Detective Robson to testify to the "grooming process" and that the student's communications with her psychologist regarding her relationship with defendant were not protected by the psychotherapist-patient privilege, we must decide whether these errors require that we reverse and remand the case for a new trial.

■  OEC 103(1) provides: "Evidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." This court has stated that a substantial right of a criminal defendant is not affected if there is (1) substantial and convincing evidence of guilt and (2) little likelihood that the error affected the verdict. *State v. Miller,* 300 Or 203, 220-21, 709 P2d 225 (1985). This interpretation of OEC 103(1) is consistent with the standard for reversible error set forth in Article VII (Amended), section 3, of the Oregon Constitution. *Id.* Although this court has in the past analyzed these two criteria separately, *see, e.g., State v. Van Hooser,* 266 Or 19, 25-27, 511 P2d 359 (1973), there is no justification for doing so, because it is apparent that the constitutional and statutory standards are fully expressed by the second criterion. Whether there was substantial and convincing evidence of guilt is not the issue; the issue is whether the error was likely to have affected the result. Of course, the less substantial the evidence of guilt, the more likely it is that an error affected the result, but that is an additional reason not to bifurcate the standard so as to require two independent inquiries.

---

tion and compulsory process clauses of Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution, as well as the due process clause of the Fourteenth Amendment. *Cf. Pennsylvania v. Ritchie,* 480 US ____, 107 S Ct 989, 94 L Ed 2d 40, 53-56 (1987) ("[C]riminal defendants have the right * * * to put before a jury evidence that might influence the determination of guilt.") (dictum); *Davis v. Alaska,* 415 US 308, 94 S Ct 1105, 39 L Ed 2d 347 (1974) (criminal defendant had Sixth Amendment confrontation clause right to question witness concerning juvenile criminal record notwithstanding state statute making such records inadmissible).

■     The central factual issue at trial was whether there had been "deviate sexual intercourse" between defendant and the student. The student testified that there was deviate sexual intercourse. Defendant denied that her relationship with the student was sexual. Detective Robson testified that during an interview with him defendant had responded affirmatively to the question, "Are you taking responsibility for the allegations made by [the student], including oral sex at Newport?" In the context of Detective Robson's testimony concerning the interview, however, it is not clear whether defendant's response was an admission that she had engaged in oral sex or a statement that she bore some responsibility for the allegation because she had "made a mistake" in allowing her relationship with the student to become too close. The remainder of the state's evidence tended to show that (1) the student had experienced scholastic and emotional problems around the time the sexual contact was alleged to have taken place and (2) defendant had a very strong affection for the student. Evidence of the latter included statements by defendant that she loved the student, favoritism toward the student at school, discussions with the student concerning the student's emotional problems and sexual confusion, touching and embracing the student in public and giving the student gifts. The defense introduced testimony that defendant was popular with other students and often gave them gifts and touched and embraced them in public.

The erroneously admitted testimony of Detective Robson and the question that prompted it were:

"Q.    [By the prosecutor] Now, do you find certain common factors when you work with both the victims and offenders in these non-family cases? Do you find certain factors or methods that an offender will use to get close to the victim?

"* * * * *

"A.    [By the witness] Yes, there are certain techniques. It's usually what I term a 'grooming process.' Usually, there's an extensive amount of testing that goes on both physically and psychologically. There is usually a lot of gift giving, a lot of affection, praising, rewards, anything to make the individual more comfortable even to the extent of dealing with lots of people surrounding this particular person, just getting into a comfortable role; in other words, feeling comfortable

and being close to an individual. Yes, they often establish some emotional dependency."

A sexual relationship might be a reasonable inference from manifestations of affection by a teacher toward a student, but it is not a crime for a teacher to love a student or even to be in love with a student. What is a crime is sexual contact. Detective Robson's expert testimony concerning "the grooming process" of "offenders" transformed evidence of defendant's expressions of affection for the student into evidence of the *modus operandi* of persons who sexually abuse children. In closing argument, the prosecutor called specific attention to this testimony, telling the jurors:

> "[Detective Robson] also talked to you about the grooming process, which were his words, that an offender will use with a victim; the process whereby an offender will draw a victim into them to where the victim feels that they are a participant, alleged participant, and unable to stop the conduct that is going on whether they know it to be right or wrong."

Later in rebuttal, however, the prosecutor told the jurors that Detective Robson's testimony concerning the character of victims and the methods of offenders was meant only to explain the student's denial, not to prove that there was sexual contact between defendant and the student.

The circuit court's pretrial ruling that the student's communications with her psychologist were privileged denied defendant the opportunity to question the student or the psychologist at trial concerning those communications and precluded defendant from placing into evidence the psychologist's files. The state stipulated that the communications included discussions of the student's relationship with defendant and that the student had initially denied to the psychologist that the relationship was sexual. If the communications contained nothing favorable to defendant other than the initial denial, then defendant was not prejudiced by the circuit court's erroneous ruling because the student testified at trial that she had initially denied to everyone, including her psychologist, that the relationship had been sexual. The difficulty, however, is that this case turns almost entirely on the credibility of the student, and we do not know whether the communications contained anything else that might have cast doubt upon that credibility.

By its ruling following the omnibus hearing that the communications from the student to the psychologist were privileged and that therefore the psychologist's file could not be examined by defendant or her counsel, the circuit court effectively precluded defendant from proving the content of the communications, except that the communications concerned, as stipulated, the relationship with defendant. *See* OEC 104(1).

At the omnibus hearing, defendant had a large envelope marked as an exhibit. The parties stipulated that the exhibit contained the psychologist's file, among other items. Defendant offered the exhibit "in the sealed condition to be examined in camera by the Court as part of this proceeding." There is nothing in the record that shows that the exhibit was either *received* or rejected by the court or considered by the court either in camera or otherwise. Later, the court did rule that the file and communications with the psychologist were privileged and ordered that the file was not subject to inspection and that "no testimony of the psychotherapist regarding statements of the child that no abuse occurred between her and the defendant will be allowed." The circuit court further ordered "that the psychotherapist records * * * which have been *introduced* as exhibits at the omnibus hearing be sealed and transmitted as part of the record on appeal." (Emphasis added.)

If the exhibit were in the record before us, we could examine it to determine whether it contained material tending to disprove the state's case, but the exhibit is not here. It is the responsibility of an appellant to designate the record on appeal. Here, defendant designated "the record, in addition to the Trial Court file, in its entirety *including* the Omnibus Hearing held * * * and the Court's ruling on the same." (Emphasis in original.) Despite the order of the circuit court following the omnibus hearing that the exhibit was to be transmitted as part of the record on appeal and despite defendant's designation of the court's ruling as part of the record on appeal, the records office of this court (and the Court of Appeals) has no record of ever receiving the exhibit.[7] In these

---

[7] Our records office has been unable to locate the exhibit through inquiry of the circuit court and of the district court of another county from which the exhibit was sent to the circuit court.

circumstances, we cannot fault defendant for failure to bring the exhibit before us.

On this record we cannot say that the verdict would have likely been the same were it not for error. Although the state in the rebuttal portion of its closing argument at trial disclaimed any reliance on Detective Robson's testimony concerning the "grooming process" to prove defendant's guilt, much of the state's case was devoted to showing the unusually affectionate relationship between defendant and the student. Detective Robson's expert testimony added a sinister cast to this evidence that it would not otherwise have had. For this we must reverse and remand for a new trial.

We wish to emphasize that in reversing we do not hold that evidence concerning the communications is necessarily admissible or that defendant is necessarily entitled to inspect the psychologist's files. Nor do we hold that defendant is entitled to pretrial discovery of any materials not available to the prosecution. We hold only that the communications are not protected by the psychotherapist-patient privilege to the extent that they bear on the alleged abuse of the student. The state on remand is entitled to raise any other objection, *e.g.,* irrelevance, to the admissibility of testimony or files concerning the communications.

The decision of the Court of Appeals is reversed in part and affirmed in part; the judgment of the circuit court is reversed and the case is remanded to the circuit court for a new trial.