Submitted December 14, 2011, reversed and remanded July 18, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TIMOTHY JOHN McCARTHY,
*Defendant-Appellant.*

Klamath County Circuit Court
0902402CR; A144997

283 P3d 391

Garrett A. Richardson and Multnomah Defenders, Inc., filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Matthew J. Lysne, Assistant Attorney General, filed the brief for respondent.

Before Brewer, Presiding Judge, and Haselton, Chief Judge.

BREWER, P. J.

## BREWER, P. J.

Defendant appeals a judgment of conviction for two counts of first-degree rape. ORS 163.375(1)(c). He argues that the trial court erred under *State v. Southard,* 347 Or 127, 218 P3d 104 (2009), and *State v. Lupoli,* 348 Or 346, 234 P3d 117 (2010), when it allowed a nurse practitioner to testify, in the absence of supporting physical evidence of abuse, that the complainant delayed reporting that she had been raped because she was afraid and had been groomed. Defendant further contends that the sentences of 100 months' incarceration and 20 years' post-prison supervision that the court imposed on each count exceeded the maximum penalty authorized for the charged crimes. We reverse and remand for a new trial based on the trial court's error in admitting certain portions of the expert's testimony and, accordingly, do not reach the claim of sentencing error.[1]

The relevant facts are not in dispute. The complainant, defendant's daughter, reported to another person that defendant had sexually abused her on multiple occasions several years earlier. The police interviewed the complainant and referred her to CARES, a child abuse assessment center. At CARES, pediatric nurse practitioner Lustig-Butts conducted a physical examination, which included a review of a previous examination conducted by a physician. The physical examination did not indicate whether the complainant had been sexually abused.[2]

When the prosecutor asked Lustig-Butts during her trial testimony "why [the complainant] did or did not disclose about [defendant] the first time," defendant objected, arguing that, because there was no physical evidence of sexual abuse, the question was an improper comment on the complainant's credibility. In response, the state made

---

[1] We note, however, that the state concedes on appeal that the trial court erred in the asserted respect.

[2] More specifically, because (1) the complainant had given birth to a child, and the parties stipulated that defendant was not the father of the child; and (2) the complainant also admitted to having had sex with another person, no expert witness was able to opine whether any physical evidence disclosed by the examination was a result of sexual abuse. *See Lupoli,* 348 Or at 362 ("[G]iven the lack of physical evidence of abuse, [the expert's testimony] necessarily was based on [an] assessment of the child's believability.").

an offer of proof. Based on that offer of proof, the trial court overruled defendant's objection.

Lustig-Butts then testified before the jury as follows:

"[Prosecutor]: Based on your training and experience, do you have an opinion as to why children do not disclose abuse?

"[Lustig-Butts]: Certainly something called delayed disclosure is the norm for children because they have fear, they have shame, they're afraid of not being believed, and so they will not disclose for a while—or ever.

"[Prosecutor]: *And did you find anything—did you find those factors in this case.*

"[Lustig-Butts]: *I certainly did.*

"[Prosecutor]: *Did you find grooming in this case?*

"[Lustig-Butts]: *In that she was—delayed her disclosure because of fear. She was told not to tell because she would tear the family apart, and so she was—entered into the secrecy, that fear. She was afraid she wouldn't be believed because of that as time went on. And so that is an aspect of grooming, yes."*

(Emphasis added.) Lustig-Butts also gave the following testimony, to which defendant did not object:

"[Prosecutor]: Part of your process at CARES and Dr. Calvert's was to evaluate her to determine where to go from here, treatment recommendations?

"[Lustig-Butts]: Yes.

"[Prosecutor]: Do you have a safety plan?

"[Lustig-Butts]: Of course whenever we see a child we look at all different aspects of the treatment recommendations that need to be made. When I saw her, because of the disclosures she gave, we recommended that she have no contact with the biological father, [defendant.]

"* * * * *

"[Prosecutor]: And what treatment did you recommend for [the complainant]?

"[Lustig-Butts]: As far as treatment—first of all, I've already talked about we recommended no contact with her biological father, [defendant], to ensure her physical and

emotional[ ] safety. It—we also felt it was very important that she get into counseling so that she could start that process of moving forward in her life again. And certainly family involvement in the therapy in that her support realm should be involved in the counseling so that they would better support her through this time.

"* * * * *

"[Prosecutor]: Did you see anything in the interviews that would form—help you form an opinion that [the complainant] had resigned herself that this was her lot in life?

"[Lustig-Butts]: Most certainly. When we saw her, she talked particularly about having one time where she was in the living room and she had talked about how she closed her eyes and was just—she was pretending she was asleep because—you know, she was closing her eyes, pretending she was asleep so she didn't have to essentially be there, see what was going on."

Defendant ultimately was convicted of both charged offenses.

On appeal, defendant argues that the trial court erred in overruling his objection to the admissibility of Lustig-Butts's testimony because, in each of the quoted instances, the testimony constituted impermissible vouching for the complainant's credibility. With respect to the unpreserved instances, defendant asks us to review the admission of the testimony as plain error. The state responds that, insofar as Lustig-Butts's testimony about grooming is concerned, she did not give a proscribed diagnosis of sexual abuse and that, accordingly, the testimony was admissible. As to the other cited instances, the state argues that the trial court did not plainly err in admitting the testimony.

"[I]n Oregon a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth." *State v. Middleton*, 294 Or 427, 438, 657 P2d 1215 (1983); *see State v. Milbradt*, 305 Or 621, 629-30, 756 P2d 620 (1988) ("[t]he assessment of credibility is for the trier of fact" and an "opinion that a person is not deceptive, could not lie without being tripped up, and would not betray a friend" is tantamount to an opinion on credibility and inadmissible); *see also State v. Keller*, 315 Or 273, 285, 844 P2d 195 (1993) ("[A] witness may not testify about the credibility of another witness.").

In *Southard*, the Supreme Court considered whether "a diagnosis of 'sexual abuse'—*i.e.*, a statement from an expert that, in the expert's opinion, the child was sexually abused—is admissible in the absence of any physical evidence of abuse." 347 Or at 142. The court held that, where "that diagnosis does not tell the jury anything that it could not have determined on its own, the diagnosis is not admissible under OEC 403." *Id.* The court reasoned that, in that circumstance, the probative value of the diagnosis is "marginal" in that juries routinely make those types of credibility determinations, but that "the risk of prejudice, however, [is] great." *Id.* at 140. The diagnosis of the child in *Southard* "was particularly problematic," the court explained,

> "because the diagnosis, which was based primarily on an assessment of the [child's] credibility, posed the risk that the jury will not make its own credibility determination, which it is fully capable of doing, but will instead defer to the expert's implicit conclusion that the victim's reports of abuse are credible."

*Id.* at 141.

"Applying that principle is a straightforward matter when one witness states directly that he or she believes another witness, or that the other witness is honest and truthful. However, statements that fall short of such overt vouching also may be impermissible." *Lupoli*, 348 Or at 358. In *Lupoli*, the court reiterated that an expert's diagnosis of child sexual abuse, in the absence of physical evidence, "necessarily was based on her assessment of the child's believability." A diagnosis based purely on an assessment of the victim's credibility, the court held, amounts to impermissible vouching. *Id.* at 361-62.

In principle, *Southard* and *Lupoli* appear to be controlling with respect to Lustig-Butts's testimony in this case that the complainant

> "delayed her disclosure because of fear. She was told not to tell because she would tear the family apart, and so she was—entered into the secrecy, that fear. She was afraid she wouldn't be believed because of that as time went on. And so that is an aspect of grooming, yes."

The state may be correct that Lustig-Butts did not explicitly vouch for the complainant's credibility, but her testimony about grooming, not merely in general terms, but as it related to the complainant's circumstances in this case necessarily was based on her assessment of the complainant's credibility and, thus, amounted to impermissible vouching.

The state remonstrates that the challenged testimony was admissible under the reasoning of the Supreme Court's decision in *State v. Perry*, 347 Or 110, 119-20, 218 P3d 95 (2009). In *Perry*, the court held that, when presented to disprove a claim that a delay in reporting demonstrates that no abuse occurred, evidence that some children who have been abused may delay disclosing abuse was admissible in a prosecution for sex crimes. However, the court's holding in *Perry* was a limited one that, most notably, did not involve expert testimony that applied general principles related to the phenomenon of delayed reporting in child sex abuse cases to the specifics of the instant case, thus inviting the jury to defer to the expert's assessment of the victim's credibility in the absence of physical evidence that a crime occurred. In that regard, the court stated:

> "In our view, that danger of unfair prejudice is not inherent in the central thesis of [the expert's] testimony that delayed reporting is common in verified cases of child sexual abuse. And, if defendant was of the view that [the expert] was embellishing that central thesis in a way that *was* unfairly prejudicial—by suggesting that delayed reporting actually might be an indicator of sexual abuse—then defendant should have made it clear to the court that he was objecting to that embellishment."

*Id.* at 120 (emphasis in original).

Here, in contrast, the challenged testimony invited the jury to defer to the expert's testimony that this particular complainant had been groomed by defendant, out of fear and concern for her family, not to report the crimes. Although the witness did not use the word "diagnosis," by any reasonable implication, she was telling the jury that she believed the complainant's report of abuse and, by extension, that the jury should believe it, too. That difference meaningfully distinguishes the circumstances of this case from those in

*Perry.* An examination of other Supreme Court decisions reinforces the distinction.

In *State v. Hansen*, 304 Or 169, 743 P2d 157 (1987), also a child sex-abuse case, the court held that expert testimony offered to explain a child's denial of the alleged abuse could not include testimony regarding the "grooming" techniques used by child abusers. The court explained that testimony pertaining to the typical responses of sexually abused children,

> "arguably is admissible * * * because it might assist the trier of fact to understand the student's initial denial. But the specific techniques used by some child abusers 'to get close to the victim,' which may result in the child's emotional dependence on the abuser, are irrelevant to the effect the dependence has on the child's willingness to implicate the abuser. It is the emotional dependence, not the specific acts that produce it, that helps to explain the child's behavior."

*Id.* at 176. In *State v. Stevens*, 328 Or 116, 970 P2d 215 (1998), the court elaborated on its reasoning in *Hansen*:

> "Although *Hansen* indicates that testimony that describes the process of victimization may be inadmissible in some circumstances, either because it is irrelevant or unduly prejudicial, that case does not hold that such testimony is, in all circumstances, inadmissible. *Hansen* involved the testimony of an expert who purported to explain the seemingly abnormal responses of a certain class of victims to a particular type of criminal behavior. In general, such experts can and must do so without providing details of the victimization process: Those details are irrelevant to the expert's subject matter and, as such, rarely will pass the balancing test of OEC 403."[3]

*Stevens*, 328 Or at 127.

---

[3] The foundational requirements for "grooming" evidence have been a hotly contested issue. *State v. Borck*, 230 Or App 619, 635 n 10, 216 P3d 915 (2009), *adh'd to as modified on recons*, 232 Or App 266, *rev den*, 348 Or 291 (2010); *see also State v. Stafford*, 157 Or App 445, 972 P2d 47 (1998), *rev den*, 329 Or 358 (1999) (Court of Appeals divided on whether a foundation for scientific evidence is required to admit expert testimony about "grooming" behavior). Regardless of the merits of that debate, one thing is clear: the Supreme Court in *Stevens* and *Hansen* has clearly recognized the dangers that are inherent in the presentation of expert testimony concerning the particularized details of the victimization process in a given case.

*Perry* involved the admissibility of generalized expert testimony purporting "to explain the seemingly abnormal responses of a certain class of victims to a particular type of criminal behavior" that the court conditionally sanctioned in *Stevens*. 328 Or at 127. The challenged evidence in this case, however, involves the details of victimization against which the court cautioned in *Stevens*. To recapitulate: where the state proffers expert testimony concerning the process of victimization—and, in particular, grooming—in cases such as this, the striking point is not, as the state posits, whether the testimony is *relevant*. In fact, defendant quite properly does not challenge its logical relevance to counter the suggestion that the complainant's delay in reporting the alleged abuse undermined her credibility. Rather, the dispositive issue is whether, in the context of a pitched credibility battle, such testimony constitutes unfairly prejudicial vouching. In that regard, the vice of such testimony is directly analogous to the problems identified in *Southard* and *Lupoli*. Here, as the court in *Stevens* contemplated, the "details of the victimization process" that Lustig-Butts recounted do not "pass the balancing test of OEC 403." *Stevens*, 328 Or at 127. It follows that the trial court erred in admitting the challenged expert testimony that the complainant delayed reporting defendant's abuse in this case because she had been groomed not to report it.

The state does not assert that the error was harmless, and we readily conclude that it was not.[4]

Reversed and remanded.

---

[4] Defendant's remaining evidentiary challenges are unpreserved. Because a different record, including particularized objections, will likely be created on remand if the state attempts to reintroduce the challenged testimony, we decline to address those issues on the record before us.