Argued and submitted February 28, reversed and remanded June 21, 2000

# STATE OF OREGON,
## *Appellant,*

*v.*

# GARY LEE WILHELM,
## *Respondent.*

## (98040967; CA A105264)

3 P3d 715

Katherine H. Waldo, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

David A. Corden argued the cause for respondent. With him on the brief were Wendy Hale and Corden Hale & Hale.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

**KISTLER, J.**

Defendant was charged with one count of first-degree sexual abuse and two counts of attempted first-degree sexual abuse. The state appeals from a pretrial order excluding three letters that defendant wrote to the victim. We reverse and remand.

Defendant is a 44-year-old man. He was in the process of obtaining custody of the victim, a 13-year-old girl. While defendant, the victim, and the victim's mother were waiting in the Linn County Courthouse to testify on an unrelated matter, several witnesses saw what they described as an "inappropriate" or "very intimate" interaction between defendant and the victim. They reported their observations to the police. One witness said that she had seen defendant massaging the victim's breast and that the victim "was standing in front of [defendant], facing him and her stomach was pressed up against his genitals." Another witness reported seeing defendant's hand on the victim's thigh.

In response to those reports, the police spoke with both defendant and the victim. Both denied any sexual relationship. The victim's mother also said that there was nothing inappropriate in the relationship between defendant and the victim. The mother told police that defendant is her cousin and that she had drawn up papers for defendant to take custody of the victim. According to defendant, the victim's mother had signed custody of the victim over to him and his relationship with the victim was that of a father and daughter. Defendant told the officer that "he did remember that he had rubbed [the victim's] arms, back, legs, and side at different times throughout the day" to console her because she was tired of having to sit around all day. He acknowledged that it was possible that he could have massaged the victim's breast without realizing what he was doing, but he did not remember doing that.

Defendant was arrested for sexual abuse in the first degree and later released on the condition that he have no contact with the victim. After his arrest, defendant wrote three letters to the victim, which the victim's grandmother found hidden in the victim's bedroom. The letters describe

defendant's feelings for the victim. They are romantic in tone and, as the trial court observed, "very intimate." They are not, however, explicitly sexual.

Before trial, defendant made a motion *in limine* to exclude the letters on the ground that they are "irrelevant and improper." The state responded that the letters are admissible under OEC 404(3)[1] and argued that it wanted to introduce the letters "to rebut the defense that [defendant and the victim] have a father daughter relationship," to "rebut the defense that the act, if indeed it did happen, * * * was either inadvertent or did not happen at all," and "to prove that the defendant had a sexual intent in the act." The state also argued that the "letters go to that proof of [defendant's] intent to commit the act of Sex Abuse and to do it for sexual gratification."

The trial court granted defendant's motion to exclude the letters. It entered a written order concluding:

"1.  The State's need for Exhibits 1, 2, and 3 is not great because the State has eyewitnesses who can describe to the jury what they saw and the jury can draw inferences from that description about the nature of the contact, if any, that occurred between the defendant and the alleged victim.

"2.  The language contained in Exhibits 1, 2, and 3 is not as sexually explicit as the evidence at issue in *State v. Millar*, 127 Or App 76[, 871 P2d 482] (1994).

"3.  Exhibits 1, 2, and 3 are not relevant to prove that the defendant's contact with the alleged victim, if any, was 'sexual contact' as defined by ORS 163.305.

"4.  Even if relevant, the prejudicial effect of Exhibits 1, 2, and 3 outweighs their probative value. While the letters contain very intimate language, they are not sexually explicit. The intimate language of the letters

---

[1] OEC 404(3) provides that:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

could lead the jury to infer something that is not contained in the letters and thus their prejudicial effect outweighs their probative value.

"* * * * *

"6.  If the defendant raises the claim that he does not have a close relationship with the alleged victim then Exhibits 1, 2, and 3, are admissible as rebuttal evidence."

On appeal, the state argues that the trial court erred in ruling that the letters were not relevant and that their prejudicial effect outweighed their probative value. We begin with the trial court's relevance ruling, which we review as a matter of law. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999). As part of the state's case, it must prove that defendant either touched or attempted to touch the victim's sexual or other intimate parts "for the purpose of arousing or gratifying the sexual desire of either party." ORS 163.427(1)(a); ORS 163.305(6).

Defendant's letters are relevant to establish his intent. The jury reasonably could infer from the letters that defendant and the victim's relationship was romantic in nature—an inference that would permit the jury to conclude that defendant's actions in touching the victim and in causing her to touch him were for a sexual rather than a nonsexual purpose. *Millar*, 127 Or App at 80-81. Evidence that defendant and the victim had a romantic relationship would also be relevant to whether he intentionally touched her breasts or only did so inadvertently, as he told the officers. *See id.* Finally, although the letters are not admissible to demonstrate that defendant had a character trait or propensity to engage in sexual misconduct, they are relevant to demonstrate his sexual predisposition for this particular victim. *See State v. McKay*, 309 Or 305, 308, 787 P2d 479 (1990).[2]

---

[2] Defendant argues that our decision in *State v. Rinkin*, 141 Or App 355, 367-69, 917 P2d 1035 (1996), establishes that his letters are not relevant. The question, however, in *Rinkin* was whether evidence of a prior crime with one child was relevant to prove the defendant's intent in committing the charged crime with another child. The question here is whether a letter describing defendant's feelings for this victim is relevant to prove his intent in touching her. The two questions present qualitatively different issues.

■■ The trial court also ruled that the letters' prejudicial effect outweighed their probative value.[3] *See State v. Mayfield*, 302 Or 631, 644, 733 P2d 438 (1987). We review that ruling for abuse of discretion. *State v. Beden*, 162 Or App 178, 182, 986 P2d 94 (1999). "An abuse of discretion occurs when a court exercises its discretion to an end not justified by and clearly against the evidence and reason." *Lutz v. State of Oregon*, 130 Or App 278, 285, 881 P2d 171 (1994).

The trial court's ruling that the prejudicial effect of the letters outweighed their probative value is based on two propositions. The court started from the proposition that, even if the letters were relevant, the state had no great need for them because the jury could always draw inferences from the eyewitnesses' testimony. The police reports submitted in opposition to defendant's motion demonstrate, however, that not all the eyewitnesses' observations were consistent. Some observations were more benign than others. And defendant, the victim, and the victim's mother all denied any impropriety. According to defendant, he may have touched the victim to console her while they waited to testify but the touching was not sexually motivated.

We recognized in *State v. Kim*, 111 Or App 1, 6, 824 P2d 1161, *rev den* 314 Or 176 (1992), that a trial court should give considerable deference to the proponent's need for evidence. That is particularly true when the evidence is needed to prove a person's state of mind. As the court observed in *State v. Johns*, 301 Or 535, 551, 725 P2d 312 (1986), "[i]ntent

---

Defendant argues more generally that our decision in *Rinkin* establishes that we should go through the five-step inquiry that the court articulated in *State v. Johns*, 301 Or 535, 725 P2d 312 (1986), to determine whether his letters are relevant to proving his intent. Defendant's letters, however, are simply the expression of his feelings for the victim and permit the jury to infer why he touched her. In comparable circumstances, we have not applied the five-part *Johns* test to determine relevance. *See Millar*, 127 Or App at 80-81; *State v. Warren*, 81 Or App 463, 467, 726 P2d 387 (1986), *aff'd* 304 Or 428, 746 P2d 711 (1987).

[3] OEC 404(4) provides that, in criminal actions, evidence of other crimes, wrongs, or acts by defendant is admissible under OEC 404(3) without balancing the probative value against the danger of unfair prejudice, unless the state or federal constitution requires that balancing. *See State v. Dunn*, 160 Or App 422, 430, 981 P2d 809 (1999), *rev pending*. The state, however, expressly disclaimed any reliance on OEC 404(4) below. On appeal, the state properly does not ask us to rely on OEC 404(4) as a basis for reversing the trial court's ruling. Rather, given the position it took below, it argues that the court abused its discretion in striking a balance between the evidence's probative and prejudicial effect.

or state of mind is often the most difficult element of a crime to prove because many crimes are unwitnessed and even if a witness is present, the witness can only surmise the actor's state of mind." In light of the conflicting evidence as to defendant's state of mind, the trial court unduly discounted the state's need for the letters.

█ The court also concluded that the letters were prejudicial. The question, however, is whether the letters are unfairly prejudicial. *See State v. Lyons*, 324 Or 256, 280, 924 P2d 802 (1996). As the court explained in *Lyons*, " 'unfair prejudice' does not mean that the 'evidence is harmful to the opponent's case—a central reason for offering evidence.' Rather, it means an undue tendency to suggest a decision on an improper basis, commonly, although not always, an emotional one." *Id.* (citations omitted). In this case, the jury could infer from defendant's letters that he had a romantic relationship with the victim. But that inference is precisely why the letters are probative. Any prejudice that may result from the letters is not "unfair prejudice," as the court has explained the concept. Conversely, if the jury does not infer from the letters that defendant had a romantic relationship with the victim, the letters have no prejudicial effect. Whichever inference the jury draws, no unfair prejudice results.

█ The trial court, however, appeared to base its prejudice ruling on a different ground. It reasoned: "While the letters contain very intimate language, they are not sexually explicit. The intimate language of the letters could lead the jury to infer something that is not contained in the letters * * *." The court appears to have been concerned that the jury could infer that defendant and the victim had a romantic relationship when they in fact simply had an ordinary father-daughter relationship. Evidence, however, is typically susceptible to different inferences. *See State v. Hampton*, 317 Or 251, 255, 855 P2d 621 (1993). That fact may affect the evidence's probative value if the inference the proponent of the evidence asks the jury to draw is a weak one. *See id.* at 254. But the fact that evidence gives rise to competing inferences does not make the evidence unfairly prejudicial. Rather, evidence will be unfairly prejudicial if it has an undue tendency to cause the jury to decide the case on an improper ground.

*Lyons*, 324 Or at 280. As explained above, defendant's letters do not suffer from that vice.

■ Trial courts have broad discretion in determining whether the prejudicial effect of evidence substantially outweighs its probative value. *Mayfield*, 302 Or at 647. Their discretion, however, is not absolute. *Id.* Ordinarily, the fact that the trial court discounted the state's need for the evidence would not be sufficient to say that it abused its discretion. When, however, as in this case, no unfair prejudice results from the evidence's admission, the trial court had no discretion to exclude it. We accordingly reverse the trial court's order and remand with instructions to admit exhibits 1, 2, and 3.

Reversed and remanded.