Argued and submitted March 14, 2000, affirmed March 21, 2001

## STATE OF OREGON,
*Respondent,*

*v.*

## HENRY EARL REED,
*Appellant.*

(97-1022; CA A104131)

21 P3d 137

Susan Elizabeth Reese argued the cause and filed the briefs for appellant.

Ann Kelley, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Haselton, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

HASELTON, P. J.

---

* Deits, C. J., *vice* De Muniz, P. J., resigned.

.

## HASELTON, P. J.

Defendant appeals from a judgment of conviction on three counts of first-degree sexual abuse. ORS 163.427. Defendant assigns error to, *inter alia*, the trial court's failure to require separate corroboration for each hearsay statement attributed to an unavailable declarant/complainant. OEC 803(18a)(b). Defendant also assigns error to the trial court's refusal, notwithstanding the psychotherapist-patient privilege (OEC 504(2)), to allow discovery of the counseling records of two of the children allegedly abused by defendant. ORS 419B.040. We hold that an eyewitness's account of abuse of the declarant by defendant satisfied the corroboration requirement in OEC 803(18a)(b) for each of the statements attributed to the declarant, because that account tended to strengthen or confirm the act of abuse described in each of those statements. We further hold that the exception to the psychotherapist-patient privilege in ORS 419B.040 is limited to materials that would exonerate or inculpate a criminal defendant, and does not permit access to otherwise privileged files simply to demonstrate the absence of any evidence regarding abuse. *State v. Hansen*, 304 Or 169, 743 P2d 157 (1987). Accordingly, we affirm.

■ On appeal from a judgment of conviction, we view the facts in the light most favorable to the state. *State v. Rose*, 311 Or 274, 276, 810 P2d 839 (1991). Defendant began a romantic relationship with Coleman in the spring of 1995. Coleman and her four children began living with defendant shortly thereafter. At the time, Coleman's two minor daughters, S and A, were 10 and six years old respectively; her two minor sons, J and D, were eight years old and nine months old respectively. Coleman and her four children lived with defendant until mid-December 1996.

In December 1996, A told a neighborhood friend that defendant was "touching her in spots she didn't like" and that she was scared defendant was going to hurt the other members of her family. Ultimately, A's friend related some of A's statements to her older brother. The brother immediately took his sister to see their mother, Gump. The next morning, Gump told Coleman about A's statements. The two women

decided that Gump should speak with A privately because they thought she might be more open with Gump about the abuse.

Gump later testified that during her private conversation with A, the girl disclosed that defendant rubbed his penis against her on numerous occasions. For example, A told Gump that late one night, after she had used the downstairs bathroom, defendant stopped her in the kitchen, took off all of her clothes, laid her on the floor, and rubbed his penis all over her. A also told Gump that defendant was "doing [S] and [D] too."

Upon hearing that A was being abused, Coleman and her four children moved into Gump's home. Coleman apparently reported the abuse and an investigation ensued. On December 19, 1996, A was briefly interviewed by both Columbia County Sheriff's Detective Cage and by Cupp, a caseworker for the State Office for Services to Children and Families, to determine whether a full examination was warranted. Cage and Cupp later testified that A described several incidents in which defendant had fondled her chest, buttocks, and genitals. Based on that interview, Cupp recommended a more thorough examination by Child Abuse Response and Evaluation Services (CARES) at Emanuel Hospital in Portland.

Sometime before the CARES examination took place, S revealed to Coleman that defendant was "hurting me too." On January 6, 1997, Shelton, a nurse practitioner with CARES, examined A and S for medical evidence of abuse. The exam revealed no physical evidence of abuse—a fact not inconsistent with the type of abuse described by the children.

Following the medical examination, Dr. Bourg, a clinical psychologist, conducted a detailed interview with the children about the alleged abuse. Those interviews were videotaped while Shelton observed from behind a viewing mirror.[1]

---

[1] At trial, Bourg and Shelton testified about the children's physical condition, as well as their demeanor, and their description of defendant's conduct. Shelton rendered an opinion that all of those factors were consistent with the sexual abuse described by A and S.

In February 1997, defendant was charged with five counts of sexual abuse in the first degree (two against A, two against D, and one against S), ORS 163.427, one count of attempted rape in the first degree against S, ORS 163.375, and one count of assault in the fourth degree against Coleman, ORS 163.160.

Before trial, the court examined S, J, and A to determine their availability to testify at trial. The court determined that both S and J were available but that A was unavailable to testify because of fear. OEC 803(18a)(b) (witness under 12 years of age is "unavailable" if he or she "is unable to communicate about the abuse or sexual conduct because of fear or other similar reason").

Thereafter, the court received testimony from investigators, as well as other adults and children, to determine whether A's out-of-court statements would be admissible at trial under OEC 803(18a)(b), which allows for the admission of hearsay testimony by an unavailable child declarant/complainant concerning an act of abuse:

> "[I]f the proponent establishes that the time, content and circumstances of the statement provide indicia of reliability, and in a criminal trial that there is corroborative evidence of the act of abuse and of the alleged perpetrator's opportunity to participate in the conduct and that the statement possesses indicia of reliability as is constitutionally required to be admitted."

Among the witnesses who testified at the pretrial hearing was A's older brother, J. J testified that he saw defendant instruct A, who was clothed, to climb on top of defendant while he reclined naked on a couch, covered only by a blanket. According to J, defendant told A, "It's okay, your mom's not home."

The trial court subsequently issued a letter opinion in which it ruled that A's out-of-court statements were admissible under OEC 803(18a)(b). In its letter opinion, the trial court first considered the issue of corroboration and concluded that, not only did defendant have the opportunity to commit the charged acts, but also—and further—J's eyewitness testimony constituted sufficient corroboration of all of the alleged abuse that A had recounted.

Next, using factors listed in OEC 803(18a)(b),[2] the court separately evaluated the reliability of each of A's statements and concluded that "[o]n those factors which relate to the reliability of the child, they would certainly favor admissibility."

In addition to those evidentiary rulings, the court also heard pretrial arguments on several discovery issues, including a dispute as to whether, notwithstanding the psychotherapist-patient privilege in OEC 504,[3] defendant could obtain discovery of A's and S's psychotherapists' files pursuant to ORS 419B.040(1). The trial court conducted an *in camera* review of A's and S's psychotherapists' files and, relying on *State v. Hansen*, denied defendant's request:

---

[2] OEC 803(18a)(b) provides, in part:

"In determining whether a statement possesses indicia of reliability under this paragraph, the court may consider, but is not limited to, the following factors:

"(A) The personal knowledge of the declarant of the event;

"(B) The age and maturity of the declarant * * *;

"(C) Certainty that the statement was made, including the credibility of the person testifying about the statement and any motive the person may have to falsify or distort the statement;

"(D) Any apparent motive the declarant may have to falsify or distort the event, including bias, corruption or coercion;

"(E) The timing of the statement of the declarant;

"(F) Whether more than one person heard the statement;

"(G) Whether the declarant was suffering pain or distress when making the statement;

"(H) Whether the declarant's young age or disability makes it unlikely that the declarant fabricated a statement that represents a graphic, detailed account beyond the knowledge and experience of the declarant;

"(I) Whether the statement has internal consistency or coherence and uses terminology appropriate to the declarant's age * * *;

"(J) Whether the statement is spontaneous or directly responsive to questions; and

"(K) Whether the statement was elicited by leading questions."

[3] OEC 504(2) provides:

"A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purposes of diagnosis or treatment of the patient's mental or emotional condition among the patient, the patient's psychotherapist or persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family."

"I have reviewed their files and have not found any evidence that would be exonerating to the defendant. * * * It's my ruling that *State v. Hansen* is limited to statements that would directly exonerate the defendant and not simply allow testimony to come in that there was no statement directly accusing the defendant of certain activity at a specific time. * * * [I]n the *Hansen* case there was in fact a retraction or denial by the alleged victim in that case, and I'm ruling that that is not the same as no statement whatsoever."

Defendant was convicted on three counts of first-degree sexual abuse—two counts against A, and one count against S. The assault count against Coleman was severed by the court, and defendant was acquitted on the remaining counts.

■ On appeal, defendant raises six assignments of error, only two of which merit discussion: (1) The trial court erred in admitting A's out-of-court statements under OEC 803(18a)(b) because it failed to require independent, separate corroboration for each hearsay statement attributed to A; and (2) the court erred by denying the defense access under ORS 419B.040(1) to the psychotherapist files of A and S.[4] We reject defendant's other assignments of error without further discussion.

In his first assignment of error, defendant relies on *State v. Renly*, 111 Or App 453, 827 P2d 1345 (1992), for the proposition that OEC 803(18a)(b), and specifically that rule's "is corroborative evidence of the act of abuse" language, requires separate corroboration for each hearsay statement attributed to A.

■ In *Renly*, we discussed the requirements of OEC 803(18a)(b) and made the following observations regarding the application of that rule in criminal proceedings. First, the rule requires that, as a prerequisite to admitting the hearsay

---

[4] That assignment also asserted that the trial court erred in refusing to provide access to A's and S's school records. Those records, however, are not in the record on appeal. Consequently, we cannot address defendant's argument relating to those records. *Wulff v. Sprouse-Reitz Co., Inc.,* 262 Or 293, 312, 498 P2d 766 (1972) (defendant who challenges nondisclosure of material has obligation to ensure that disputed material is included in record on appeal).

testimony of an unavailable declarant, the court must determine that the hearsay statement itself is circumstantially reliable. That requirement protects a defendant's confrontation rights under Article I, section 11, of the Oregon Constitution, and the Sixth Amendment to the United States Constitution. *Renly*, 111 Or App at 461 ("If a trial court examines the proffered hearsay under pertinent factors and finds that the statements are inherently trustworthy, then the evidence can be admitted without violating a defendant's confrontation rights."). Second, the rule's corroboration prong requires that a trial court look beyond the circumstantial reliability of the statement itself, and determine whether *"independent* corroborating evidence" supports admission of the hearsay. *Id.* at 463 (emphasis in original). This requirement "ensure[s] that an accused [will] not be convicted solely on the basis of hearsay." *Id.*; *see also State ex rel Juv. Dept. v. Hill*, 116 Or App 379, 380, 841 P2d 2 (1992) (corroboration is an extra-constitutional requirement designed to ensure that a person accused of sexual abuse will not be convicted on the basis of hearsay alone).[5] Third, corroborating evidence need not be admissible or even presented at trial. Rather, in assessing whether corroborating evidence exists:

> "[A] trial court is not bound by the Oregon Evidence Code, except with respect to privileges, in receiving evidence on preliminary questions of admissibility of evidence. OEC 101(4)(a); OEC 104(1). * * * OEC 803(18a)(b) does not predicate admission of hearsay statements on the presentation of the corroborative evidence *at trial." Renly*, 111 Or App at 463 (emphasis in original).

Finally, in ruling that hearsay is admissible under OEC 803(18a)(b), the trial court must make explicit findings as to what evidence it relied upon as corroboration. *Id.* at 468. Without such explicit findings, we are unable to meaningfully review the trial court's ruling. *Id.*; *see also State v.*

---

[5] *See also* Laird C. Kirkpatrick, *Oregon Evidence*, 570-71 (3rd ed 1996) ("The rule appears to be more strict than the [federal confrontation clause standard established in *Idaho v. Wright*, 497 US 805, 821-22, 110 S Ct 3139, 3150, 111 L Ed 2d 638, 656 (1990),] in that even after the determination of unavailability and reliability is made the rule requires corroboration of the act of sexual conduct and of the defendant's participation in it.").

*Mayer*, 146 Or App 86, 95-96, 932 P2d 570 (1997) (remanding to trial court to make findings regarding corroboration).

Here, the trial court made the requisite findings. In ruling that A's hearsay statements would be admissible at trial, the court explained:

> "I will address the corroboration issue first. There is no doubt defendant had an opportunity to commit the alleged acts. He resided in the same home as [A] and there were obviously times when they were alone. I am satisfied that [J]'s eyewitness testimony of the incident involving the blanket provides sufficient corroboration. He observed [defendant] naked under a blanket entice [A] to get on him suggesting it was O.K. as her mother was not home. I can not believe the Statute requires more corroboration than this."

Defendant challenges that ruling on two grounds. First, defendant asserts that J's testimony does not corroborate A's hearsay statements because J's account "[a]t best * * * is a description of an innocent event [and] [a]t its worst, it describes an ambiguous one * * *." Second, J's account, which described an uncharged incident, does not corroborate any particular charged abuse, much less each of the charged incidents.

■ We reject defendant's suggestion that J's testimony does not amount to corroborating evidence. In *Renly*, this court identified a nonexclusive list of evidence that could constitute corroborative evidence: "[C]orroborating evidence * * * might include a confession, an eye witness account, physical evidence, and evidence showing that the accused had access to the purported victim." 111 Or App at 463. Here, the trial court could properly regard the conduct J observed — defendant was "naked with a blanket over him and he told [A] to get on him," coupled with defendant's contemporaneous statement, "It's okay, your mom's not home" — as evincing improper sexual conduct by defendant with the complainant. That is, the trial court, in determining whether J's eyewitness account supported the admissibility of A's statement, OEC 104(1) and (2), could properly view the described conduct as not "innocent" or "ambiguous."[6]

---

[6] As noted, J testified, and was subjected to cross-examination, in the preliminary hearing. Consequently, unlike much of the supposedly "corroborating"

Defendant's alternative argument that OEC 803(18a)(b) requires direct and distinct corroboration for each hearsay statement attributed to A—and that J's account could not fulfill that corroboration function—requires a more thorough discussion. Although *Renly* identifies particular types of "corroborative" evidence, including eyewitness accounts of abuse, 111 Or App at 463, it does not purport to define "corroborative evidence" for purposes of OEC 803(18a)(b).

■ The meaning of "corroborative evidence" in OEC 803(18a)(b) is, ultimately, a question of legislative intent.[7] In discerning the intent of the legislature, we first consider the text in context, giving language its "plain, natural, and ordinary meaning." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). Where appropriate, we also refer to well-established legal meanings for terms that the legislature has used in crafting a statute. *McIntire v. Forbes*, 322 Or 426, 431, 909 P2d 846 (1996).

■ "Corroborative" means: "to strengthen * * *: serving or tending to corroborate: CONFIRMATORY." *Webster's Third New Int'l Dictionary*, 512 (unabridged ed 1993). "Corroborate" means: "to provide evidence of the truth of: make more certain." *Id.* Finally, "evidence" is defined as "something that furnishes or tends to furnish proof." *Id.* at 788. Thus, the plain meaning of "corroborative evidence" of an act of abuse is something that tends to make the existence of an act of abuse more likely.

---

evidence in *Renly*, the proffered corroboration here was not itself hearsay. *Compare Renly*, 111 Or App at 465 (hearsay testimony describing abuse by a criminal defendant of other victims of abuse cannot be corroborative evidence); *see also Mayer*, 146 Or App at 93-94 (corroboration cannot come from out-of-court statement admissible under another hearsay exception).

[7] As noted, the trial court applied the factors enumerated in OEC 803(18a)(b) and found that *each* statement attributed to A was reliable. Defendant's opening brief on appeal did not challenge that determination but, instead, focused on the statute's corroboration requirement. In his reply brief, defendant asserts for the first time on appeal that he "has not abandoned his argument that the statements made to all of the witnesses except [J] who described hearsay were not reliable." That argument comes too late, *see Espinosa v. Southern Pacific Trans.*, 50 Or App 561, 573 n 15, 624 P2d 162, *aff'd* 291 Or 853, 635 P2d 638 (1981), and, consequently, we do not consider the correctness of the trial court's determination of the *reliability* of the statements (as distinct from the corroboration requirement). Given that posture, the issue before us is solely one of statutory, and not constitutional, admissibility.

 That "plain meaning" construction accords both with the general legal "term of art" definition of "corroborating evidence" and with Oregon decisions construing the same term in other statutory contexts. *Black's Law Dictionary* defines "corroborating evidence" as "[e]vidence supplementary to that already given and tending to strengthen or confirm it. Additional evidence of a different character to the same point." *Id.* at 344 (6th ed 1990). The Supreme Court has consistently similarly construed "corroborative evidence," including, most recently, in *Marshall v. SAIF Corp.*, 328 Or 49, 968 P2d 1281 (1998). In *Marshall*, the court addressed the context of the "corroborative evidence" requirement of ORS 656.128(3),[8] the workers' compensation "sole proprietor claim" provision:

> "Turning to 'corroborative evidence,' we agree with the Court of Appeals' definition of that phrase, as 'evidence, different from the evidence of the claimant, that tends to make more certain the compensability of the claim.' [*Marshall v. SAIF*, 146 Or App 50, 53, 931 P2d 823 (1997)]. We have defined corroboration or corroborative evidence similarly in other contexts in our decisions over the years. For example, in *Farmers Insurance Exch. v. Colton*, 264 Or 210, 217, 504 P2d 1041 (1972), *quoting* 2 E. Conrad, Modern Trial Evidence § 1155 (1956), we held that 'corroboration' is ' "something which leads an impartial and reasonable mind to believe that material testimony is true, testimony of some substantial fact or circumstance independent of a statement of a witness." ' Nothing in the statutory context of ORS 656.128(3) points to a different interpretation. Therefore, we hold that the corroborative evidence required in ORS 656.128(3) must be independent of and apart from claimant's own statements." *Marshall*, 328 Or at 56-57.

*See also State v. Lerch*, 296 Or 377, 394, 677 P2d 678 (1984) (under ORS 136.425(1), a person who has confessed to a crime can be convicted based on that confession if "the state introduce[s] independent evidence that tends to establish the corpus delicti"). "Corroborative evidence" is, thus, a broad concept. As employed in OEC 803(18a)(b), it encompasses proof that tends to make more certain that the defendant did,

---

[8] ORS 656.128(3) states: "No claim shall be allowed or paid under this section, except upon corroborative evidence in addition to the evidence of the claimant."

in fact, commit the misconduct described in the unavailable declarant's hearsay statements. We need not—and do not purport to—explore the limits of that concept here. Rather, our inquiry is precise: Does an eyewitness's testimony that a defendant sexually abused the complainant on one occasion "corroborate" the complainant's hearsay statements that the defendant had sexually abused her on other occasions? We conclude that it does.

Our conclusion finds support in our case law addressing the admissibility of evidence of a defendant's prior interactions with an alleged sex abuse victim. *See, e.g.,* *State v. McKay*, 309 Or 305, 308, 787 P2d 479 (1990) (the complainant's testimony describing prior uncharged sexual contacts between the defendant and the complainant was admissible "to demonstrate the sexual predisposition this defendant had for this particular victim"); *State v. Wilhelm*, 168 Or App 489, 492-93, 3 P3d 715 (2000) (adult defendant's "romantic" and "very intimate," albeit not "explicitly sexual," letters to juvenile complainant were admissible as being probative of whether the defendant's actions were for a sexual purpose and were "relevant to demonstrate his sexual predisposition for this particular victim").

We emphasize that here, unlike in *McKay* and *Wilhelm*, the question is not whether evidence of the defendant's prior misconduct towards the same victim is admissible as substantive evidence at trial. *Accord State v. Leach*, 169 Or App 530, 535 n 6, 9 P3d 755 (2000) (noting, but not addressing, "same victim predisposition" issue). Rather, the issue is merely whether, as presented in the preliminary hearing, J's eyewitness account sufficiently corroborated A's hearsay recounting of abuse so that A's statements could be admitted at trial.[9] Nevertheless, as *corroboration*, J's eyewitness account served the same function as the victim's description of prior, uncharged abuse in *McKay* or the defendant's "love letters" in *Wilhelm*. It evinced defendant's "sexual predisposition for this particular victim," *McKay*, 309 Or at 308; *Wilhelm*, 168 Or App at 493, and, consequently, tended to

---

[9] We note, parenthetically, that J did, in fact, testify at trial about seeing defendant engage in sexual misconduct with A. Defendant does not assign error to the admission of that testimony at trial.

make more certain that defendant had, in fact, abused A on the other, charged occasions.

Defendant is correct that J's account does not precisely correspond to any of the charged incidents. But that is too narrow a view of corroboration. Many of the examples of corroboration listed in *Renly*, including forensic reports and psychological evaluations, do not necessarily relate to a particular incident of abuse but, instead, often corroborate the fact of abuse in general. Similarly, if a defendant writes diary entries describing his desire to sexually abuse a particular victim, those statements would surely corroborate the victim's allegations that the defendant had abused her on a specific occasions. J's account here corroborated A's statements in the same way.

The trial court properly ruled that A's statements were admissible under OEC 803(18a)(b).

■ We turn, then, to defendant's assignment of error challenging the trial court's refusal to allow defendant access to A's and S's psychotherapy records. In "setting the stage," we highlight four matters that are *not* in dispute: First, defendant made a proper discovery request to obtain the counseling records of A and S. *See* ORS 135.805 *et seq*. (establishing rules for discovery in criminal proceedings). Second, the state, on behalf of A and S, properly asserted the psychotherapist-patient privilege in an effort to prevent defendant's discovery of those records. *See* OEC 504. Third, notwithstanding OEC 504, defendant could obtain discovery of A's and S's psychotherapy records if the exception codified in ORS 419B.040 applies or if defendant has some constitutional right to obtain discovery. Finally, the trial court's *in camera* inspection of A's and S's psychotherapy files was proper because defendant made the requisite threshold showing that the inspection might yield evidence that an exception to nondisclosure applied. *See Frease v. Glaser*, 330 Or 364, 372-73, 4 P3d 56 (2000) (stating threshold requirements for *in camera* inspection); *see also State v. Charlesworth/Parks*, 151 Or App 100, 120, 951 P2d 153 (1997), *rev den* 327 Or 82 (1998).

The issue thus reduces to whether the trial court, having conducted the *in camera* inspection, erroneously

failed to make the psychotherapist records available to the defense. Defendant argues, particularly, that the trial court applied the improper legal standard in conducting its *in camera* review of the files and that, under *State v. Hansen*, he was entitled to the records in order to demonstrate that A and S had *failed to discuss any abuse* with their psychotherapist. That is, the premise of defendant's position is that *Hansen* compels disclosure because the absence of any allegations in the records is probative of whether abuse occurred at all:

> "Clearly a 'non statement' in the context of an opportunity to make a statement to someone who was a trusted therapist * * * would have been a very important piece of evidence for defense counsel to have acquired."

We conclude that *Hansen* does not compel disclosure.

OEC 504(2) states the general rule in Oregon regarding the psychotherapist-patient privilege:

> "A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purposes of diagnosis or treatment of the patient's mental or emotional condition among the patient, the patient's psychotherapist or persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family."

ORS 419B.040(1) provides:

> "In the case of abuse of a child, the privileges created in ORS 40.230 to 40.255, including the psychotherapist-patient privilege, the physician-patient privilege, the privileges extended to nurses, to staff members of schools and to registered clinical social workers and the husband-wife privilege, shall not be a ground for excluding evidence regarding a child's abuse, or the cause thereof, in any judicial proceeding resulting from a report made pursuant to ORS 419B.010 to 419B.050."

In *Hansen*, the court considered the proper relationship between those two provisions. There, the defendant, a high school teacher, was accused of engaging in deviate sexual intercourse with a 15-year-old student in violation of ORS 163.385. *Hansen*, 304 Or at 171. Before trial, the defendant

requested an omnibus hearing to determine whether the psychotherapist-patient privilege applied to communications between the student and her psychologist regarding the student's relationship with the defendant. *Id.* at 177. At that hearing, the parties stipulated that the student had discussed the relationship with her counselor and that she "had initially told the psychologist that she had not had a sexual relationship with [the] defendant." *Id.*

 The trial court ruled that the communications were privileged because the child's statements that abuse had *not* occurred did not fall within the statutory exception to the psychotherapist-patient privilege. We affirmed. *State v. Hansen*, 82 Or App 178, 728 P2d 538 (1986).[10]

 The Supreme Court reversed, holding that the exception to the psychotherapist-patient privilege now codified in ORS 419B.040(1)[11] applied equally to both evidence of abuse and exculpatory evidence. In so holding, the court noted that the purpose of the exception was to "assist in the proof of child abuse and the cause thereof, both in criminal and other proceedings." *Hansen*, 304 Or at 179. Given that legislative objective, "It would hardly assist the child to convict an innocent person of child abuse while the actual perpetrator remained free to continue abusing the child." *Id.* Thus, the court concluded:

---

[10] In affirming, we did not address the merits of the trial court's ruling but, instead, concluded that the statutory exception to the privilege did not apply because the prosecution had not resulted from a report made pursuant to the mandatory reporting statute, which was then codified at ORS 418.750 (1987), and is now set out, as amended, at ORS 419B.010 to ORS 419B.050. *See Hansen*, 82 Or App at 186-87.

The Supreme Court declined to affirm on that alternative ground:

"This theory was not urged by the state, which at oral argument in this court contended that the prosecution *did* result from a report made pursuant to ORS 418.750. The Court of Appeals' resolution of the issue may well have been correct. The issue, however, is of some complexity; given that neither party argues that the prosecution did not result from a report made pursuant to ORS 418.750, the better course is to defer decision on this issue until it is appropriately presented in an adversarial context. Therefore, we shall assume that this case is a judicial proceeding to which ORS 418.775(1) applies." *Hansen*, 304 Or at 178 (emphasis in original).

[11] *Hansen* interpreted the exception to the psychotherapist-patient privilege codified in *former* ORS 418.775, *repealed by* Or Laws 1993, ch 546, § 141. That exception is now codified in ORS 419B.040. Or Laws 1993, ch 546, § 21. For simplicity, we will refer only to the current code section.

"[T]he legislature intended to make a limited exception to the psychotherapist-patient privilege in order to assist in a search for the truth regarding an instance of possible child abuse, not in order to prove a particular result. The state has pointed to nothing, and we have been unable to find anything, in the legislative history of the child abuse reporting laws from which we could infer that in addition to facilitating proof of child abuse the legislature intended to limit the exception so as to prevent a person accused of abuse from introducing exculpatory evidence." *Id.*

Here, defendant asserts that that language from *Hansen* compels access to records even if they include *no* reference to abuse—that is, neither descriptions of abuse nor denials of abuse—because the "non-statement" is, itself, exculpatory. The trial court rejected that approach, noting that the records in *Hansen* included the complainant's explicit denial of abuse and, thus, *Hansen* is "limited to statements that would directly exonerate the defendant and not simply allow testimony to come in that there was no statement directly accusing the defendant of certain activity at a specific time."

We conclude, for several reasons, that the trial court's understanding of *Hansen* and of ORS 419B.040(1) was correct. First, the circumstances here are materially different from those in *Hansen*. In *Hansen*, it was undisputed that the complainant had, in fact, discussed her relationship with the defendant with her psychologist and had initially denied any sexual contact with her. Here, the records include no such denials. Thus, the factual predicate for the analysis and disclosure in *Hansen* is not present here.[12]

Second, under defendant's interpretation of *Hansen*, the "exception" (ORS 419B.040) would swallow the privileged

---

[12] This case and *Hansen* are, however, factually similar in another respect—or, at least, seem to be: Here, as in *Hansen*, it does not *appear* that the prosecution was initiated as the result of a report under the mandatory reporting laws, as specified in ORS 419B.040. Rather, it *appears* that the prosecution, or at least the investigation leading to the prosecution, came about when Coleman reported the abuse to the authorities. However, as in *Hansen*, the state does not argue that ORS 419B.040 is inapplicable for that reason. Given the Supreme Court's disposition of the seemingly similar matter in *Hansen*, we forego affirmance on that alternative ground.

"whole" (OEC 504(2)) in juvenile sex abuse cases. Psychotherapist records would be subject to disclosure if they included descriptions of abuse or denials of abuse—and they would also be subject to disclosure if they did not. Under defendant's reading of *Hansen*, *nothing* would be privileged. That treatment cannot be squared with *Hansen*'s description of ORS 419B.040(1) as a *"limited* exception to the psychotherapist-patient privilege." 304 Or at 179 (emphasis added).

We note finally, as a practical matter, that defense counsel was free, as the state points out, "to argue that the failure to report the abuse earlier casts doubt on the validity of the later reports" and that, "because the state did not prove any earlier report, no earlier report of [abuse] existed." Indeed, defense counsel made essentially this argument in his closing arguments to the jury. Thus, denying defendant access to A's and S's privileged records did not meaningfully compromise defendant's argument in that regard.

The trial court properly refused to allow disclosure of A's and S's psychotherapist records.

Affirmed.