Argued and submitted November 6, 2002, affirmed June 12, appellant's petition for reconsideration filed June 26, allowed by opinion September 10, 2003
See 189 Or App 487, 76 P3d 668 (2003)

# STATE OF OREGON,
*Respondent,*

*v.*

# HENRY ROGER BASSINE,
*Appellant.*

## 99-1293; A114379

71 P3d 72

Susan Elizabeth Reese argued the cause and filed the brief for appellant.

Katherine H. Waldo, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Defendant appeals a judgment of conviction for two counts of sexual abuse in the first degree, ORS 163.427, and one count of sodomy in the first degree, ORS 163.405. He assigns error to the trial court's refusal to compel the production and disclosure of subpoenaed counseling records of the complainant without having first conducted an *in camera* review. For the reasons below, we affirm.[1]

Over the years, defendant and his wife served as foster parents for over 30 children, including S. After defendant's wife died in July 1996, S, who was then 11 years old, remained in the home with defendant. S did not disclose to any adults that anything inappropriate was occurring between her and defendant. However, she did tell two of her friends, including another foster child in the same home, that defendant had sexually touched her. On one occasion, the other foster child walked past the living room and saw S sitting on defendant's lap with her nightgown down around her waist. S asked her friends not to tell anyone about the sexual abuse.

S was removed from defendant's home in February 1998, after the other foster child told the police what she had seen and what S had disclosed to her. When questioned by both the police and Services to Children and Families (SCF), S denied that defendant ever acted inappropriately. Nonetheless, S was removed from defendant's home and placed in another foster home and continued to live there in permanent foster care at the time of trial.

On July 26, 1999, S attended a counseling session with a psychologist, Dr. Johnston. That evaluation was required by the Casey Family Foundation (CFF) before S could be admitted to a CFF program. Sometime after that counseling session, in August or September 1999, S's current foster parents had a talk with S in which they expressed concern about tendencies S had to lie about inconsequential matters. During that conversation, S disclosed the acts of sexual

---

[1] Defendant also raises a number of other assignments of error, which we affirm without discussion.

abuse that she alleged defendant had committed against her. As a result, Child Abuse Response and Evaluation Services (CARES) examined S and conducted a videotaped interview with S in which she described her complaints. S also continued her counseling with Johnston as part of the CFF program. Defendant was interviewed by the police in October 1999 and denied having sexual contact with S.

Defendant was charged with first-degree rape, first-degree sodomy, and two counts of first-degree sexual abuse. The state subpoenaed Johnston's counseling records from CFF for trial. At a pretrial hearing, defendant joined in the subpoena, explaining that, if the state had not subpoenaed the counseling records, he would have. In a letter, CFF objected to the subpoena, claiming that the counseling records sought by the parties were protected by the psychotherapist-patient privilege. In response, the state, again joined by defendant, issued a second subpoena *duces tecum* and moved to compel production of the counseling records.[2] In addition, defendant filed a motion requesting the court to perform an *in camera* inspection of Johnston's counseling records before making any determination concerning their privileged nature. CFF filed a motion opposing defendant's request for an *in camera* inspection and moved to quash the subpoena.

After a hearing, the trial court quashed the subpoena. The trial court held that the psychotherapist-patient privilege precluded the disclosure of Johnston's counseling records regarding S and that, on the facts of this case, the privilege also precluded disclosure of the records to the trial court for *in camera* review. Further, the trial court held that S had not waived the privilege. Defendant was later convicted by a jury of two counts of sexual abuse in the first degree and one count of sodomy in the first degree. He was acquitted of rape in the first degree.

On appeal, defendant's assignment of error is that "the trial court erred by refusing to compel the counseling

---

[2] Generally, the proper enforcement mechanism for a criminal subpoena is the court's contempt power, not a motion to compel. ORS 136.600; *see State v. Cartwright*, 173 Or App 59, 66 n 9, 20 P3d 223 (2001), *rev allowed*, 333 Or 399 (2002).

records of the complaining witness (sought by both parties to the case) without conducting an *in camera* review of these records to determine relevant, discoverable material."[3] More accurately phrased, the question we must decide is whether the trial court erred in quashing the subpoena *duces tecum* without conducting an *in camera* inspection of the materials.

We begin with the psychotherapist-patient privilege, which provides, in part:

> "A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications * * * made for the purposes of diagnosis or treatment of the patient's mental or emotional condition, among the patient, the patient's [psychotherapist] or persons who are participating in the diagnosis or treatment under the direction of the [psychotherapist], including members of the patient's family."

OEC 504-1(2). At the pretrial hearing, defendant conceded that Johnston was a licensed psychotherapist and that S met with Johnston for treatment purposes. Therefore, the counseling records were covered by the privilege and that privilege could be claimed by S, S's guardian, or Johnston on behalf of S. OEC 504(3)(a)-(d) (privilege may be invoked by patient, guardian, or psychotherapist). OEC 504(4) provides a "nonexclusive list of limits on the privilege," including situations where the communications are part of a court-ordered examination, a patient's condition is an element of a claim, or the patient is the subject of a mental commitment proceeding. Defendant does not contend that any of those limitations apply. A person also may waive a privilege against disclosure if the person "voluntarily discloses or consents to disclosure of any significant part of the matter or communication." OEC 511.[4] However, a person voluntarily

---

[3] The state, having obtained a conviction and having an interest in sustaining that conviction, has retreated from the position it maintained at trial and now asserts that the trial court's ruling regarding the records at issue was correct.

[4] OEC 511 provides:

"A person upon whom [OEC 503 to 514] confer a privilege against disclosure of the confidential matter or communication waives the privilege if the person or the person's predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication. This section does not apply if the disclosure is itself a privileged communication. Voluntary disclosure does occur * * * as to psychotherapists in

disclosing privileged material does not waive the privilege if the disclosure is itself a privileged communication. *Id.*

Defendant makes three distinguishable arguments regarding his entitlement to inspection of the materials, which we address in the most logical order.[5] First, defendant argues that S waived the privilege when a worker from SCF, S's former guardian, signed a mutual release for disclosure of records between Johnston, CARES, and SCF. We disagree. The release form was signed before CFF became S's guardian and states the purpose for the release as "evaluation" and "case planning." Voluntary disclosure of privileged material does not waive the privilege if the disclosure is itself privileged. OEC 511. Defendant does not dispute that the mutual release of information was for purposes of treatment and diagnosis and therefore itself privileged. Further, defendant concedes that, through discovery, he received all of Johnston's materials that were in SCF''s actual possession.[6]

Defendant's next argument is that he was entitled to an *in camera* inspection to determine relevant, discoverable material. According to defendant, "[t]he practice of reviewing records, otherwise privileged, *in camera* and providing items which may be favorable to the accused or material to the presentation of evidence concerning his guilt or innocence is long-standing." The problem with defendant's argument is that he fails to distinguish between material possessed by the state or one of its agents, to which he is entitled to discovery, and material possessed solely by a third party, to which he is not entitled to discovery. *See State v. Cartwright*, 173 Or App

the case of a mental or emotional condition * * * upon the holder's offering of any person as a witness who testifies as to the condition."

[5] We understand defendant's assignment of error to pertain solely to Johnston's counseling records. In defendant's brief, he makes some glancing references to counseling records possessed by Columbia County Mental Health Clinic, which also provided counseling to S. Those records appear to have been examined *in camera* by the trial court. Defendant does not develop any cognizable or meaningful argument that he was entitled to those materials, and we do not address them any further.

[6] Regarding SCF's continuing access to Johnston's materials, the release form stated that "I [the guardian] can cancel this authorization at any time, but I understand that the cancellation will not affect any information that was already released before the cancellation." Thus, while SCF had potential future access to Johnston's materials, such access was tenuous and could be revoked by S or her guardian at any time.

59, 65, 20 P3d 223 (2001), *rev allowed*, 333 Or 399 (2002) (differentiating between defendant's right to pretrial discovery and defendant's right to produce other evidence at trial). Defendant concedes that the state did not possess the counseling records at issue. For this reason, the cases cited by defendant for support are inapposite. *State v. Wood*, 112 Or App 61, 827 P2d 924, *rev den*, 313 Or 355 (1992) (child welfare agency's files pertinent to an investigation are presumed to be in the prosecutor's possession or control and defendant is entitled to discovery of them); *State v. Fleischman*, 10 Or App 22, 32, 495 P2d 277, *rev den* (1972) (state may not deny defendant access to records to which it has access if those records contain evidence of guilt or innocence, even if that evidence is otherwise privileged against disclosure). Because defendant is not entitled to discovery from CFF, he also is not entitled to an *in camera* inspection for discoverable material.

To be entitled to an *in camera* inspection of privileged material not subject to discovery, defendant must make a threshold showing that the inspection might yield evidence that an exception to nondisclosure applied. *Frease v. Glazer*, 330 Or 364, 372-73, 4 P3d 56 (2000) (*in camera* inspection of attorney's files permissible if demonstrated that such inspection might yield evidence of crime-fraud exception to attorney-client privilege); *State v. Reed*, 173 Or App 185, 197, 21 P3d 137, *rev den*, 332 Or 559 (2001) (*in camera* inspection of victims' psychotherapy files proper because defendant made requisite threshold showing that the inspection might yield evidence that an exception to nondisclosure applied). Here, defendant has not identified an exception to nondisclosure that might be revealed through inspection of the privileged materials.[7]

Lastly, defendant argues that he was denied his constitutional right to compulsory process under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution.[8] In *Cartwright*, we

_____

[7] Defendant has not raised ORS 419B.040, which establishes an exception to the psychotherapist-patient privilege in juvenile sex abuse cases for both exculpatory and inculpatory material. *State v. Hansen*, 304 Or 169, 743 P2d 157 (1987); *Reed*, 173 Or App at 200.

[8] Article I, section 11, provides that, "[i]n all criminal prosecutions, the accused shall have the right * * * to have compulsory process for obtaining witnesses in his favor * * *."

noted that the right to compulsory process under the Oregon Constitution parallels the right under the federal constitution and that "[t]he right to compulsory process encompasses both a right of discovery and a right to compel the production of evidence." *Cartwright*, 173 Or App at 72. As to discovery, a defendant is constitutionally entitled to information that is (1) in the possession of the prosecution and (2) material and favorable to a defendant's guilt or punishment. *Id.*; *Brady v. Maryland*, 373 US 83, 87, 83 S Ct 1194, 10 L Ed 2d 215 (1963). Here, the material sought by defendant was not possessed by the state and therefore defendant is not constitutionally entitled to discovery of that material.

■    As to the production of other privileged or protected materials,

> "the defendant must clear two hurdles. First, the defendant must demonstrate that the testimony or other information sought is not only favorable to him, but is material to the issues in the case. If the defendant so demonstrates, then the defendant must identify an interest in the evidence that outweighs the legitimate interest reflected in the privilege or evidentiary limitation that the defendant seeks to overcome."

*Cartwright*, 173 Or App at 73. In this case, defendant sought access to privileged material because it "may contain vital material to [defendant's] defense." Defendant points to the fact that S disclosed the abuse shortly after her first meeting with Johnston and argues that it is critical for the defense to know the context in which the allegations arose. Although defendant has arguably demonstrated that the counseling sessions possibly contain relevant information, he has not demonstrated that the privileged material at issue would be favorable to his defense and thus he was not denied his state or federal constitutional right to compulsory process.[9]

---

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have compulsory process for obtaining witnesses in his favor * * *."

[9] We recognize the Catch-22 quality to that test, which results from the conflict between a defendant's constitutional right to produce witnesses in his favor and venerated evidentiary privileges. The test acknowledges that the information sought is confidential, but nonetheless requires the party seeking the information to demonstrate that the information, which the party does not have access to, is material and favorable.

For the above reasons, the trial court did not err in refusing to perform an *in camera* inspection of Johnston's counseling records and in quashing the subpoena *duces tecum* that sought access to those records.

Affirmed.