129 Nev., Advance Opinion 90

# IN THE SUPREME COURT OF THE STATE OF NEVADA

NOE ORTEGA PEREZ,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 55817

FILED

NOV 27 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of six counts of lewdness with a child under 14 years of age and two counts of sexual assault of a minor under 14 years of age. Eighth Judicial District Court, Clark County; Michelle Leavitt, Judge.

*Affirmed.*

David Phillips, Las Vegas,
for Appellant.

Catherine Cortez Masto, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Steven S. Owens, Chief Deputy District Attorney, and James R. Sweetin, Deputy District Attorney, Clark County, for Respondent.

Robert Arroyo and Amy Coffee, Las Vegas,
for Amicus Curiae Nevada Attorneys for Criminal Justice.

Richard A. Gammick and Terrence P. McCarthy, Reno,
for Amicus Curiae Nevada District Attorneys Association.

3/10/14: Corrected per letter to publishers. OT

13-35850

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, PARRAGUIRRE, J.:

In this appeal, we are concerned with the admissibility of expert testimony related to sex offender grooming behavior and the effect that behavior has on a child victim. "Grooming" generally describes conduct or actions by an offender that are undertaken to develop a bond between the victim and offender and, ultimately, make the victim more receptive to sexual activity with the offender. In particular, we address whether (1) the district court abused its discretion in concluding that the State's expert was qualified to offer grooming behavior testimony, (2) the expert's testimony improperly vouched for the complaining witness's testimony, and (3) the expert witness notice was insufficient.

As a general matter, we hold that whether expert testimony on grooming behavior is admissible in a case involving sexual conduct with a child must be determined on a case-by-case basis, considering the requirements that govern the admissibility of expert testimony. Those requirements include whether the particular expert is qualified to testify on the subject, whether the testimony is relevant and the product of reliable methodology such that it will assist the jury to understand the evidence or to determine a fact in issue, and whether the testimony is limited in scope to matters that are within the expert's specialized knowledge. Applying those considerations, we conclude that the district court did not abuse its discretion in admitting the expert testimony in this case. We further conclude that the expert's testimony did not improperly



vouch for the complaining witness's testimony and that the State's pretrial notice was sufficient. We therefore affirm the judgment of conviction.

## FACTS AND PROCEDURAL HISTORY

Appellant Noe Perez was convicted of six counts of lewdness with a minor under 14 years of age and two counts of sexual assault of a minor under 14 years of age, involving his niece. At trial, the victim testified that her relationship with Perez began to change after she turned 13. He began calling her more and complimenting her, as well as winking at her when they attended the same parties. After driving her and a couple home one evening, Perez kissed the victim and touched her thigh when they were alone. He later called her and told her about a dream he had about undressing her and said that he was uncomfortable when she was close to other boys.

In September 2008, Perez invited the victim to accompany him and his wife, Maria, to Las Vegas, Nevada, for a concert. Perez's own children did not come on this trip. On the first evening, Perez played with the victim's feet under the table at dinner, hugged her while they walked along the street, and kissed the victim while Maria was in the shower. The next day, Perez again played with the victim's feet while she was swimming in the hotel pool, and the victim indicated that she wanted to spend time alone with Perez.

In the hotel room, Perez began kissing the victim after Maria had entered the bathroom and turned on the shower. Perez undressed the victim, kissed her breasts, rubbed her vaginal area, and penetrated her vagina with his fingers and tongue. Maria emerged from the shower and began screaming at Perez and the victim and slapping the victim. Hotel

SUPREME COURT
OF
NEVADA

(O) 1947A

3

security arrived shortly thereafter, and the victim told them that Perez had pinned her down and touched her. The victim testified that she told security that Perez forced her down because she feared Maria would leave her in Las Vegas. While Maria's reports to hotel security and responding officers were consistent with the victim's testimony, Maria testified that she only saw Perez kissing the victim, who was fully clothed.

Dr. John Paglini testified that the grooming relationship is a deceptive relationship with the intent of sexual contact. Dr. Paglini testified that an uncle touching his niece's foot under a table, winking at her, calling her and talking about how pretty she was, pulling her close while walking, touching her feet and arm in a swimming pool, touching her thigh, kissing her, showing concern for her spending time with other suitors, telling her about a dream in which he undressed her, and inviting her to attend an out-of-town concert with him could be construed as grooming behavior. In particular, he noted that showing concern for her spending time with other boys acts to isolate her from other intimate relationships and telling her about the dream is a method of probing her resistance to engaging in sexual behavior. The ultimate goal of such behavior is to establish a trusting relationship that lowers the child's resistance to engaging in sexual activity. Dr. Paglini also testified that whether a victim discloses abuse "is based upon the relationship to the perpetrator, the impact on the family and also the perceptions of the alleged victim regarding the people they're being interviewed on." Dr. Paglini noted that grooming typically results in lower rates of abuse disclosure.

## DISCUSSION

The issues raised in this appeal involve expert testimony on "grooming" behavior.[1] The term "grooming" describes when an offender prepares a child for victimization by "'getting close to [the] child, making friends with the child, becoming perhaps a confidant of the child, [and] getting the child used to certain kinds of touching, [and] play activities.'" *State v. Stafford*, 972 P.2d 47, 49 n.1 (Or. Ct. App. 1998) (quoting trial expert testimony). It can also include gifts, praises, and rewards, *id.*; *State v. Hansen*, 743 P.2d 157, 160 (Or. 1987), *superseded by statute on other grounds as stated in Powers v. Cheeley*, 771 P.2d 622, 628-29 n.13 (Or. 1989), as well as exposure to sexual items and language, *People v. Ackerman*, 669 N.W.2d 818, 825 (Mich. Ct. App. 2003). This conduct is undertaken to develop an emotional bond between the victim and offender, *Hansen*, 743 P.2d at 160; *Morris v. State*, 361 S.W.3d 649, 651 (Tex. Crim. App. 2011), and may even lead the victim to feel responsible for his or her own abuse, *Stafford*, 972 P.2d at 49 n.1. The offender engages in grooming activity to reduce the child's resistance to sexual activity and reduce the possibility that the victim will report the abuse. *Ackerman*, 669 N.W.2d at 824-25.

### Expert qualification

Perez contends that the State failed to present sufficient evidence of Dr. Paglini's qualifications to testify as an expert. He

---

[1]We invited the participation of amici curiae Nevada Attorneys for Criminal Justice (NACJ) and Nevada District Attorneys Association (NDAA) concerning the relevance and applicability of expert testimony about sex offender grooming.

SUPREME COURT
OF
NEVADA

(O) 1947A

therefore argues that the district court abused its discretion in allowing Dr. Paglini to testify as an expert on grooming activity.

"The threshold test for the admissibility of testimony by a qualified expert is whether the expert's specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue." *Townsend v. State*, 103 Nev. 113, 117, 734 P.2d 705, 708 (1987); *see* NRS 50.275 ("If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by special knowledge, skill, experience, training or education may testify to matters within the scope of such knowledge."). Expert testimony is admissible if it meets the following three requirements, which we have described as the "qualification," "assistance," and "limited scope" requirements:

> (1) [the expert] must be qualified in an area of "scientific, technical or other specialized knowledge" (the qualification requirement); (2) his or her specialized knowledge must "assist the trier of fact to understand the evidence or to determine a fact in issue" (the assistance requirement); and (3) his or her testimony must be limited "to matters within the scope of [his or her specialized] knowledge" (the limited scope requirement).

*Hallmark v. Eldridge*, 124 Nev. 492, 498, 189 P.3d 646, 650 (2008) (second alteration in original) (quoting NRS 50.275); *see also Higgs v. State*, 126 Nev. ___, ___, 222 P.3d 648, 658 (2010). We review a district court's decision to allow expert testimony for an abuse of discretion. *Hallmark*, 124 Nev. at 498, 189 P.3d at 650. As explained below, we conclude that Dr. Paglini's testimony satisfied the three requirements identified in *Hallmark*.

*Qualification requirement*

Perez argues that there was nothing to indicate that Dr. Paglini had sufficient training or experience to assert an opinion as to the effect of grooming behaviors on the young victim. Further, Perez complains that this was the first time that Dr. Paglini had testified regarding grooming behaviors and he failed to establish that his findings were subjected to peer review or that he had received specialized training in the area of sex offender grooming behaviors. Amicus NACJ asserts that the record is insufficient to support a conclusion that Dr. Paglini was qualified to testify to grooming techniques as he had not published any scholarly articles or testified regarding grooming techniques in any proceeding prior to Perez's trial.

We have identified several nonexclusive factors that are useful in determining whether a witness "is qualified in an area of scientific, technical, or other specialized knowledge" and therefore may testify as an expert. *Hallmark*, 124 Nev. at 499, 189 P.3d at 650. Those factors include "(1) formal schooling and academic degrees, (2) licensure, (3) employment experience, and (4) practical experience and specialized training." *Id.* at 499, 189 P.3d at 650-51 (footnotes omitted).

We conclude that Dr. Paglini's academic career and professional experience were sufficient to qualify him to testify as an expert on grooming behaviors and the effects of such behaviors on victims of sexual abuse. Dr. Paglini was formally educated in psychology. He held a bachelor's degree in psychology and a doctorate degree in clinical psychology. For the ten years prior to trial, Dr. Paglini "worked with family courts [conducting] child custody evaluations, dealing with the

issues of domestic violence or sex abuse allegations." During the eight years prior to trial, he conducted over 1,000 psychosexual evaluations on sex offenders. In conducting those evaluations, Dr. Paglini considered "variables like sex offending history, substance abuse problems, previous criminal problems . . . [and] the relationship of the offender and the victim." Thus, he spent the better part of his career studying the relationships between victims and offenders. In looking at these relationships, Dr. Paglini studied whether grooming by the offender occurred. Based on his formal schooling and academic degrees and his employment and practical experience, Dr. Paglini possessed the knowledge or experience necessary to render an opinion on grooming behaviors and the effects of such behaviors on victims of sexual abuse. *See Morris*, 361 S.W.3d at 666-67 ("A person can, through his experience with child-sex-abuse cases gain superior knowledge regarding the grooming phenomenon."); *see also People v. Atherton*, 940 N.E.2d 775, 783, 790 (Ill. App. Ct. 3d 2010) (child welfare supervisor who had worked as a sexual abuse therapist for over six years qualified to testify about child-sexual-abuse-accommodation syndrome); *Ackerman*, 669 N.W.2d at 824, 825 (psychotherapist with master's degree in social work and who works with sex offenders and victims qualified); *State v. Quigg*, 866 P.2d 655, 661 (Wash. Ct. App. 1994) (expert with 13 years' experience in victims services unit, degree in child abuse and neglect, and numerous hours in intensive training and specialized workshops on child abuse, who had also conducted interviews with 3,000 victims qualified to testify about grooming). Other jurisdictions have concluded that witnesses with less academic preparation, *see Haycraft v. State*, 760 N.E.2d 203, 210-11 (Ind.

SUPREME COURT
OF
NEVADA

(O) 1947A

8

Ct. App. 2001) (detective with experience investigating sexual abuse cases and who attended training on sexual abuse was qualified as a "skilled witness" to discuss grooming); *People v. Petri*, 760 N.W.2d 882, 888 (Mich. Ct. App. 2008) (detective with 15 years of law enforcement experience and who received training in forensic interviews of children would have qualified to offer testimony about grooming), or less experience than Dr. Paglini, *see Atherton*, 940 N.E.2d at 790, were sufficiently qualified to offer expert testimony on grooming or the effect of abuse on child victims.

We next examine whether Dr. Paglini's grooming testimony satisfied the "assistance" requirement of NRS 50.275.

*Assistance requirement*

The "assistance" requirement asks whether the expert's "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." NRS 50.275. The "assistance" requirement has two components: whether the testimony is (1) relevant and (2) the product of reliable methodology. *Hallmark*, 124 Nev. at 500, 189 P.3d at 651 ("An expert's testimony will assist the trier of fact only when it is relevant and the product of reliable methodology." (footnote omitted)). Although Perez only challenged Dr. Paglini's qualifications, at our invitation, amici briefed the relevance of expert testimony about sex offender grooming.

*Relevance*

Evidence is relevant when it tends "to make the existence of any fact that is of consequence to the determination of the action more or less probable." NRS 48.015. Generally, all relevant evidence is admissible. NRS 48.025. However, relevant evidence is not admissible if

SUPREME COURT
OF
NEVADA

(O) 1947A

9

its probative value is substantially outweighed by the danger of unfair prejudice or misleading the jury, or if it amounts to needless presentation of cumulative evidence. NRS 48.035.

Amicus NACJ contends that Dr. Paglini's testimony was not particularly probative because the issue for the jury to decide was whether Perez committed the charged acts, not his intent during the purported grooming activity. Further, NACJ argues, what probative value the testimony may have had was outweighed by the danger of unfair prejudice as the testimony compared Perez's behavior to the known behavior of sex offenders and created a distinct impression that Perez was a sex offender.[2] Amicus NDAA argues against a broad rule that would prohibit expert testimony about sex offender grooming and instead urges a case-by-case approach.

We conclude that expert testimony on grooming behaviors and its effect on child victims of sexual abuse may be relevant depending on the circumstances of the case. Dr. Paglini's testimony, under the circumstances in this case, was relevant. The victim testified that Perez engaged in seemingly innocuous flirtatious behavior and sexual discussions that finally escalated into more overt sexual contact, which is

---

[2]The NACJ also contends that the State should not have been able to introduce an expert opinion as to Perez's *mens rea*. We disagree. *See* NRS 50.295 ("Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."); *Townsend*, 103 Nev. at 118, 734 P.2d at 708 (noting that an expert may give an opinion on issues that embrace the ultimate issue to be decided by the trier of fact so long as it is within scope of expertise).

not unlike a dating relationship. This trajectory of behavior seems to indicate even to the lay juror a definite design on engaging in sexual conduct with the victim and may suggest that expert testimony would be unnecessary to explain his designs. *See United States v. Raymond*, 700 F. Supp. 2d 142, 150-51 (D. Me. 2010) ("'Expert' testimony about matters of common sense is not helpful to a jury and carries the risk of unfair prejudice . . . ."). However, it was not immediately apparent how Perez's behavior affected the victim. Notably, the victim appeared to acquiesce to the abuse and later gave inconsistent reports about that abuse. The victim's conduct leading up to the abuse and her inconsistent reports after the abuse could have been influenced by Perez's prior fawning, the fear of Maria's reaction to the conduct, and later counseling. Therefore, Dr. Paglini's testimony that the goal of grooming is to reduce the resistance to the abuse as well as the likelihood of disclosure was beneficial to the jury in evaluating the evidence of abuse and assessing the victim's credibility. *See United States v. Hitt*, 473 F.3d 146, 158-59 (5th Cir. 2006) (finding no abuse of discretion by district court admission of expert grooming testimony to explain "return-to-the-abuser behavior"); *Jones v. United States*, 990 A.2d 970, 978 (D.C. 2010) ("The testimony helped to explain not only how a child molester could accomplish his crimes without violence, but also why a child victim would acquiesce and be reluctant to turn against her abuser."); *Howard v. State*, 637 S.E.2d 448, 451 (Ga. Ct. App. 2006) (admitting evidence of grooming, even if it incidentally places defendant's character in issue, to explain victim's unwillingness to disclose abuse); *Ackerman*, 669 N.W.2d at 825-26 (recognizing that most jurors lack knowledge of the conduct of sexual abusers and thus expert testimony

regarding grooming behavior was helpful); *State v. Berosik*, 214 P.3d 776, 782-83 (Mont. 2009) (admitting expert testimony about grooming as relevant to assessing victim credibility); *see also Smith v. State*, 100 Nev. 570, 572-73, 688 P.2d 326, 327 (1984) (holding that expert testimony about family dynamics related to sexual abuse is relevant to help the jury understand "superficially unusual behavior of the victim and her mother").

As to unfair prejudice, Dr. Paglini's testimony did not stray beyond the bounds set by this court and other jurisdictions for expert testimony. Dr. Paglini generally addressed how grooming occurs and its purpose. He then offered insight in the form of hypotheticals that were based on Perez's conduct and indicated that such conduct was probably grooming behavior. *See Shannon v. State*, 105 Nev. 782, 787, 783 P.2d 942, 945 (1989) (providing that experts can testify to hypotheticals about victims of sexual abuse and individuals with pedophilic disorder). He did not offer an opinion as to the victim's credibility or express a belief that she had been abused. *See Townsend*, 103 Nev. at 118-19, 734 P.2d at 708-09. Dr. Paglini's testimony therefore meets the first component of the "assistance" requirement.

*Reliability of methodology*

This court has articulated five factors to use in evaluating the second component of the "assistance" requirement—whether an expert's opinion is the product of reliable methodology. These factors include

> whether the opinion is (1) within a recognized field of expertise; (2) testable and has been tested; (3) published and subjected to peer review; (4) generally accepted in the scientific community (not always determinative); and (5) based more on

particularized facts rather than assumption, conjecture, or generalization.

*Hallmark*, 124 Nev. at 500-01, 189 P.3d at 651-52 (footnotes omitted). These "factors may be afforded varying weights and may not apply equally in every case." *Higgs v. State*, 126 Nev. ___, ___, 222 P.3d 648, 660 (2010).

Considering the applicable factors, we conclude that Dr. Paglini's opinion was the product of reliable methodology. In particular, Dr. Paglini practices in a recognized field of expertise, *see Ackerman*, 669 N.W.2d at 824, 825 (noting that psychotherapist who works with sex offenders is "clearly qualified in a recognized discipline"); *Morris*, 361 S.W.3d at 656 (recognizing study of behavior of sex offenders to be a legitimate field of expertise), and he testified about a phenomenon that courts have recognized as generally accepted in the scientific community, *see Morris*, 361 S.W.3d at 668 (concluding that grooming as a phenomenon exists); *see also State v. Stafford*, 972 P.2d 47, 54 (Or. Ct. App. 1998) (noting that observations about grooming behavior not drawn from testing or scientific methodology but derived from personal observations made in light of education, training, and experience constituted admissible evidence based on specialized knowledge); *Bryant v. State*, 340 S.W.3d 1, 9 (Tex. Crim. App. 2010) (same). Although he testified about the general nature of grooming, his testimony indicated that he had based this on specific facts observed in his practice and applied it to the specific circumstances of this case. However, the record does not indicate that Dr. Paglini's opinion had been subject to peer review or was testable or had been tested. While Dr. Paglini's methodology did not meet two of the *Hallmark* factors, those factors are not as weighty given the nature and

subject matter of his opinion testimony. *See Higgs*, 126 Nev. at ___, 222 P.3d at 660.

Finally, we must determine if Dr. Paglini's expert opinion was limited to the area of his expertise. *Hallmark*, 124 Nev. at 498, 189 P.3d at 650.

*Limited scope requirement*

Perez argues that Dr. Paglini's testimony about neurological development was outside the scope of his proposed testimony and that the State failed to show that he had received neurological training. We agree. Dr. Paglini's testimony, for the most part, proceeded within the scope of his expertise. He testified about the phenomenon of grooming and its effect on the victim. However, during a digression, Dr. Paglini testified regarding adolescent neurological development. As Dr. Paglini had not demonstrated any specialized knowledge in neuroscience or adolescent neurological development, this part of his testimony exceeded the scope of his specialized knowledge. *See Kelly v. State*, 321 S.W.3d 583, 600-01 (Tex. Crim. App. 2010) (concluding that expert who lacked medical training was not qualified to testify about grooming when her testimony was predicated on detailed medical information). However, Perez did not object to this digression on the basis that it exceeded the scope of Dr. Paglini's qualifications. Because Dr. Paglini's digression was brief, as compared to the whole of his testimony, we conclude that it did not amount to plain error. *See Gallego v. State*, 117 Nev. 348, 365, 23 P.3d 227, 239 (2001) (reviewing for plain error where party fails to object at trial), *abrogated on other grounds by Nunnery v. State*, 127 Nev. ___, ___ n.12, 263 P.3d 235, 253 n.12 (2011).

*Vouching*

Perez also contends that Dr. Paglini's testimony impermissibly bolstered the victim's testimony and therefore the district court abused its discretion in admitting it. We disagree.

A witness may not vouch for the testimony of another or testify as to the truthfulness of another witness. *Lickey v. State*, 108 Nev. 191, 196, 827 P.2d 824, 827 (1992). Although an expert may not comment on whether that expert believes that the victim is telling the truth about the allegations of abuse, *Townsend*, 103 Nev. at 118-19, 734 P.2d at 709; *see also Lickey*, 108 Nev. at 196, 827 P.2d at 827 (noting that expert commentary on the veracity of the victim's testimony invades the prerogative of the jury), Nevada law allows an expert to testify on the issue of whether a victim's behavior is consistent with sexual abuse, if that testimony is relevant, *see Townsend*, 103 Nev. at 118, 734 P.2d at 708; NRS 50.345 ("In any prosecution for sexual assault, expert testimony is not inadmissible to show that the victim's behavior or mental or physical condition is consistent with the behavior or condition of a victim of sexual assault.").

Dr. Paglini did not vouch for the victim's veracity. He offered a general opinion about the effect of grooming on a child victim of sexual abuse. He did not offer a specific opinion as to whether he believed that the victim in this case was telling the truth. "[T]he fact that such evidence is incidentally corroborative does not render it inadmissible, since most expert testimony, in and of itself, tends to show that another witness either is or is not telling the truth." *Davenport v. State*, 806 P.2d 655, 659 (Okla. Crim. App. 1991); *see Townsend*, 103 Nev. at 118-19, 734 P.2d at

709 (acknowledging that "expert testimony, by its very nature, often tends to confirm or refute the truthfulness of another witness" but that relevant testimony by a qualified expert within that expert's field of expertise is admissible "irrespective of the corroborative or refutative effect it may have on the testimony of a complaining witness" so long as the expert does not "directly characterize a putative victim's testimony as being truthful or false"); *Bryant*, 340 S.W.3d at 10 ("The information about grooming could have influenced the jury's credibility determinations, but only in an indirect fashion."). Therefore, the district court did not abuse its discretion in admitting the testimony.

*Sufficiency of expert witness notice*

Last, Perez contends that the State's notice of expert testimony was inadequate and therefore the district court should have precluded the State from calling Dr. Paglini. We disagree.

The State filed its notice of witnesses over one month before the start of trial. *See* NRS 174.234(2) (requiring State to provide notice of expert witnesses at least 21 days prior to trial). To comply with NRS 174.234(2), the notice had to include: "(a) A brief statement regarding the subject matter on which the expert witness is expected to testify and the substance of the testimony; (b) A copy of the curriculum vitae of the expert witness; and (c) A copy of all reports made by or at the direction of the expert witness." The State's notice in this case indicated that Dr. Paglini would "testify as to grooming techniques used upon children" and included his curriculum vitae. Dr. Paglini's curriculum vitae indicated that he had conducted sexual offender assessments on adult offenders and sexual offense and violence risk assessments on juveniles. The State did not

submit any reports produced by Dr. Paglini because he did not prepare any reports related to the litigation. Perez's brief argument does not allege that the State acted in bad faith or that his substantial rights were prejudiced because the notice did not include a report or more detail about the substance of Dr. Paglini's testimony. *See Mitchell v. State*, 124 Nev. 807, 819, 192 P.3d 721, 729 (2008). Under the circumstances, we discern no abuse of discretion in allowing Dr. Paglini to testify. *See id.* ("This court reviews a district court's decision whether to allow an unendorsed witness to testify for abuse of discretion.").

Having rejected Perez's challenges to the admission of Dr. Paglini's testimony, we affirm the judgment of conviction.[3]

_____, J.
Parraguirre

We concur:

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Saitta

_____

[3]We deny Perez's motion to strike NACJ's request for a remand for additional supplementation of the record as moot.

Supreme Court
of
Nevada

(O) 1947A

DOUGLAS, J., with whom PICKERING, C.J., and CHERRY, J., agree, concurring in part and dissenting in part:

I concur with the majority's conclusion that the admissibility of expert testimony about grooming should be decided on a case-by-case basis under NRS 50.275 and *Hallmark v. Eldridge*, 124 Nev. 492, 189 P.3d 646 (2008). However, such testimony should be admitted in rare circumstances, and I disagree that this case warrants its admission. The State did not introduce sufficient specific evidence that Dr. Paglini was qualified to discuss grooming of child victims by sex offenders, and his testimony did not assist the jury in understanding the victim's actions and unfairly prejudiced Perez. I also disagree with the majority's conclusion that the expert-witness notice was sufficient.

*Admission of expert testimony*

Expert testimony is admissible if it meets three requirements, which we have described as the "qualification," "assistance," and "limited scope" requirements:

> (1) [the expert] must be qualified in an area of "scientific, technical or other specialized knowledge" (the qualification requirement); (2) his or her specialized knowledge must "assist the trier of fact to understand the evidence or to determine a fact in issue" (the assistance requirement); and (3) his or her testimony must be limited "to matters within the scope of [his or her specialized] knowledge" (the limited scope requirement).

*Hallmark*, 124 Nev. at 498, 189 P.3d at 650 (second alteration in original) (quoting NRS 50.275); *see also Higgs v. State*, 126 Nev. ___, ___, 222 P.3d 648, 658 (2010). As I explain below, the State failed to put forth sufficient

evidence to demonstrate that Dr. Paglini was qualified to offer expert testimony and the testimony that he provided failed to assist the jury.

*Expert qualifications*

The majority concludes that Dr. Paglini's academic career and professional experience were sufficient to qualify him to offer the testimony on the grooming phenomenon. It notes that Dr. Paglini is a clinical psychologist who had conducted child custody evaluations, pretrial competency evaluations, death penalty evaluations, and psychosexual evaluations. However, Dr. Paglini did not identify how many of his prior evaluations involved child victims of sexual abuse or grooming, and he had not written any treatises or articles on the phenomenon.

Dr. Paglini's principal qualification, according to his testimony, was his work preparing "risk assessments" for use in sentencing convicted sex offenders. "[I]t's my job as a psychologist . . . to educate the judge on the history of the defendant, what their violent history and sex offender history is" so the court can "understand what the risk of reoffending is towards a community" in sentencing. Continuing, Dr. Paglini testified, "You're looking at certain variables like sex offending history . . . . Was there grooming involved, and what was the grooming?" Notably absent from Dr. Paglini's testimony about his qualifications was any reference to work with victims of grooming. Rather, the focus was—and remained—on what sex offenders do that can constitute grooming.

Grooming testimony is permissible in certain child-sex-abuse cases, normally to explain the impact the grooming had on the victim's behavior in terms of delayed reporting and the like. *See* NRS 50.345 ("expert testimony is not inadmissible" in sexual assault cases when

offered to show "the behavior or condition of a victim of sexual assault"). But here, the record does not show Dr. Paglini's qualification to address the impact on the victim of grooming activity. He thus did not demonstrate with sufficient specificity that his formal schooling, employment experience, or practical experience qualified him to testify about grooming and its impact on the victim in this case. *See Hallmark*, 124 Nev. at 499, 189 P.3d at 650-51; *see also* NRS 50.275; *Jones v. United States*, 990 A.2d 970, 975, 978-80 (D.C. 2010) (former FBI agent who studied 400 to 500 cases of sexual abuse involving teenage victims as well as published writing in manuals on sexual abuse and the behavior of child molesters qualified); *Morris v. State*, 361 S.W.3d 649, 668 (Tex. Crim. App. 2011) (recognizing that law enforcement officer "with a significant amount of experience with child sex abuse cases may be qualified" to discuss grooming).

Although this court has not specified the requirements for admitting expert testimony about grooming, I would have preferred a more thorough record for reviewing the district court's exercise of discretion, including the link between his expertise and the subject matter of the testimony being offered to assist the jury in this case.

*Assistance*

The record further fails to demonstrate that Dr. Paglini's testimony was sufficiently relevant to have assisted the jury. *See* NRS 50.275 (requiring that expert testimony assist the jury to "understand the evidence or to determine a fact in issue"); *Hallmark*, 124 Nev. at 500, 189 P.3d at 651 (requiring that expert testimony be "relevant and the product of reliable methodology" (footnote omitted)). The majority notes that

Perez's behavior and conduct with the victim began as mildly flirtatious and escalated to the point of being overtly sexual. I agree with the majority that Perez's actions needed no expert explanation in and of themselves as his designs for engaging in sexual conduct with the victim were evident from the escalating nature of his actions. However, I part from the majority's conclusion that expert testimony was necessary to explain the effect of Perez's actions on the victim.

The testimony was not of assistance because the victim could, and in fact did, explain how Perez's conduct allayed her resistance to his abuse. The victim, who was 14 years old at the time of trial, testified about events that occurred only the year before, described how the grooming activity made her feel, and acknowledged that she developed feelings for Perez. Further, she did not resist Perez's physical advances because of these feelings. In addition, she explained her hesitance to fully and accurately disclose the nature of Perez's abuse. Remarkably, her resistance to disclosing the abuse turned on fear of her aunt's reaction, not the effects of Perez's grooming. Because the victim explained during her testimony that Perez's conduct ingratiated himself to her and, to some extent, beguiled her, *see Morris*, 361 S.W.3d at 652, 667 (describing grooming behavior as "really no different from behavior that occurs in high school dating"), the expert testimony was unnecessary, *see United States v. Raymond*, 700 F. Supp. 2d 142, 152 (D. Me. 2010) (noting that expert testimony on motivation of child victim is not required when victim can testify about her motivations); *State v. Braham*, 841 P.2d 785, 790 (Wash. Ct. App. 1992) ("Surely, expert opinion is not necessary to explain that an adult in a 'close relationship' with a child will have greater

 

*opportunity* to engage in the alleged sexual misconduct."). While this court tolerates expert testimony that *incidentally* bolsters another witness's testimony, *see Townsend v. State*, 103 Nev. 113, 118-19, 734 P.2d 705, 709 (1987) (recognizing that expert testimony may have a corroborative effect on the complaining witness's testimony), the testimony here *primarily* served to augment the victim's testimony.

As the expert testimony was not probative with regard to the victim's actions, it became unfairly prejudicial in how it characterized Perez's behavior. Unnecessary expert testimony carries the risk of unduly influencing the jury:

> Expert testimony on a subject that is well within the bounds of a jury's ordinary experience generally has little probative value. On the other hand, the risk of unfair prejudice is real. By appearing to put the expert's stamp of approval on the government's theory, such testimony might unduly influence the jury's own assessment of the inference that is being urged.

*United States v. Montas*, 41 F.3d 775, 784 (1st Cir. 1994); *see also Raymond*, 700 F. Supp. 2d at 150 (noting that expert witness testimony about matters in the jury's common sense "invites a toxic mixture of purported expertise and common sense"). Although expert insight into the effect of grooming behavior, *i.e.*, the victim's emotional dependence on the abuser, may have appeared relevant to understanding the victim's reluctance to come forward, testimony about the defendant's prior bad acts, which may have fostered that emotional dependence, did not explain the victim's behavior and carried a significant risk of unfair prejudice to the defendant by characterizing his prior actions as similar to those of

 

other sex offenders. *See State v. Hansen*, 743 P.2d 157, 160-61 (Or. 1987), *superseded on other grounds by* Or. Evidence Code R. 103, *as stated in Powers v. Cheely*, 771 P.2d 622, 628 n.13 (Or. 1989). Thus, where expert testimony addresses a defendant's prior bad acts, "[c]are must be taken in order that prior acts evidence is not bundled into an official-sounding theory and coupled with expert testimony in order to increase its apparent value in demonstrating a 'plan' or malevolent intent by the defendant." *State v. Coleman*, 276 P.3d 744, 750 (Idaho Ct. App. 2012).

Apart from his testimony about the impulsivity of adolescents due to lack of cortical function in the frontal lobes of the brain—testimony the majority correctly concludes Dr. Paglini was not qualified to give—Dr. Paglini said very little about grooming's impact on victim behavior that, left unexplained, would confuse the jury. Rather, Dr. Paglini was asked to define grooming and then to answer a series of purported hypotheticals, such as, "You have a situation of a 13-year-old niece who had known her 33-year-old uncle her whole life and had seen him on a regular basis, would the following conduct over about a three and four month period potentially constitute grooming activity? First touching the niece's foot under the table at family parties or winking at the niece." There follows a series of hypothetical questions, each one identifying something the defendant did in relation to the victim, such as calling her, objecting to her having boyfriends, and concluding it might be grooming. Such testimony

> exceeded permissible bounds when the prosecutor tailored the hypothetical questions to include facts concerning the abuse that occurred in this particular case. [It] went beyond explaining victim behavior that might be beyond the ken of a

jury, and had the prejudicial effect of implying that the expert found the testimony of this particular claimant to be credible.

*People v. Williams*, 987 N.E.2d 260, 263 (N.Y. 2013); *see State v. McCarthy*, 283 P.3d 391, 394-95 (Or. App. 2012).

Here, Dr. Paglini focused on Perez's uncharged bad (and, in some instances, perhaps innocent) acts and characterized them as motivated purely by his intent to sexually abuse his niece. The testimony carried a significant risk that the jury would "make the quick and unjustified jump from his expert testimony about behavioral patterns to guilt in a particular case that shows similar patterns." *Raymond*, 700 F. Supp. 2d at 150; *see also Hansen*, 743 P.2d at 161 (noting that where probative value is lacking, "the danger of unfair prejudice to defendant from the unwarranted inference that, because defendant engaged in acts that sexual child abusers engage in, she, too, is a sexual child abuser is simply too great"). Thus, even if the testimony had some limited probative value, NRS 48.015, that value was substantially outweighed by the danger of unfair prejudice, NRS 48.035(1).

Considering that the State failed to elicit sufficient information regarding Dr. Paglini's qualifications and the victim was able to articulate how Perez's prior conduct affected her, I would conclude that the district court abused its discretion in admitting this testimony. I reiterate that I am not opposed to the use of expert testimony on grooming in all cases. It certainly becomes more relevant where the grooming activity in question is not clearly apparent or the child witness is of such an age that he or she could not plainly express how that activity affected

him or her. Nevertheless, in that situation, the State must make a sufficient showing that the expert has sufficient academic or professional experience specifically related to grooming of child sexual assault victims.

*Expert-witness notice*

I further disagree with the majority's conclusion that the expert-witness notice was adequate to inform the defendant of the extent of testimony that the State sought to elicit. NRS 174.234(2) requires pretrial disclosure of experts in cases involving gross misdemeanor or felony charges. The disclosure must, at minimum, give "[a] brief statement regarding the subject matter on which the expert witness is expected to testify *and the substance of the testimony.*" NRS 174.234(2)(a) (emphasis added). The State's expert-witness disclosure designated Dr. Paglini and stated he would "testify as to grooming techniques used upon children," nothing more. This notice was far too brief, and while it identified the subject matter of the testimony in the broadest of terms, it did not sufficiently address the substance of that testimony. As noted above, most of Dr. Paglini's direct testimony involved his opinion of hypothetical scenarios posed by the prosecutor that mirrored the specific facts of this case. The notice did not inform Perez that the State sought Dr. Paglini's opinion on these matters. Further, the notice did not inform the defense that Dr. Paglini had reviewed materials specific to this case, including the victim's statements, reports, and transcripts of other hearings. Therefore, Dr. Paglini's testimony about the specific conduct at issue in this case ambushed Perez with expert testimony he was not warned to be prepared to defend against.

*Harmless error*

I further conclude that the error in admitting Dr. Paglini's testimony was not harmless. *See Fields v. State*, 125 Nev. 776, 784, 220 P.3d 724, 729 (2009) (reviewing erroneous admission of evidence for harmless error). In considering whether the erroneous admission of evidence had a "'substantial and injurious effect or influence in determining the jury's verdict,'" *Tavares v. State*, 117 Nev. 725, 732, 30 P.3d 1128, 1132 (2001) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)), this court considers "whether the issue of innocence or guilt is close, the quantity and character of the error, and the gravity of the crime charged." *Big Pond v. State*, 101 Nev. 1, 3, 692 P.2d 1288, 1289 (1985).

This case is impacted by all three factors. First, the question of guilt or innocence is close. The testimony supporting the charges was inconsistent. The victim's testimony was inconsistent with her initial reports to hotel security and the police. Perez's wife, whose initial reports to hotel security and the police supported the allegations of abuse, testified consistently with Perez's admission that he kissed the victim. No physical evidence supported the allegations. Second, the character of the error was particularly damaging in this case. Expert testimony which rationalized the inconsistencies in the victim's testimony had a significant impact on the jury's determination of guilt. The problem was exacerbated by the emphasis Dr. Paglini and the State placed on Dr. Paglini's work conducting "risk assessments" on known sex offenders. Proceeding act by act through hypothetical questions concerning the flirtations that preceded the Las Vegas assault portrayed Perez as a sex offender, on a par with the 1,000 other convicted sex offenders of risk to the community Dr.

Paglini had evaluated. But Perez was not on trial for grooming over a three to four month period in California. The charges he faced involved a single incident in a Las Vegas hotel room that occurred in the space of time it took Perez's wife, the victim's aunt, to take a shower in the room's adjacent bathroom. Lastly, Perez was charged with serious sexual offenses against a minor, for which he has been sentenced to multiple life sentences, with the possibility of parole after 35 years. *See* NRS 200.366(3)(c); NRS 201.230(2).

Accordingly, I would reverse the judgment of conviction and remand for a new trial.

_____, J.
Douglas

I concur:

_____, C.J.
Pickering

_____, J.
Cherry

SUPREME COURT
OF
NEVADA

(O) 1947A