# IN THE SUPREME COURT OF THE STATE OF NEVADA

THOMAS WRAY HERNDON,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 68381

FILED

APR 26 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of eight counts of sexual assault on a child under fourteen years of age and two counts of lewdness with a child under fourteen years of age. Second Judicial District Court, Washoe County; Jerome M. Polaha, Judge.

### BACKGROUND

In July of 2013, five-year-old A.H. and eight-year-old L.H. made accusations of sexual abuse against their babysitter, Henry Dempsey, who lived in their home, and their father, appellant Thomas Herndon. Both girls were removed from the home. In subsequent interviews with Detective Greg Nauman, A.H. and L.H. each described instances of sexual assault by both Dempsey and Herndon. Dempsey confessed to sexually assaulting both girls on multiple occasions, and eventually entered a plea of guilty to sexual assault on a minor.

After learning of A.H. and L.H.'s accusations, Herndon's seventeen-year-old niece, A.P., came forward. A.P. described multiple

17-13880

instances of sexual assault by Herndon when she was between the ages of five and eight years old. Herndon's wife provided Detective Nauman with multiple cards and letters in which Herndon admitted to molesting both A.P. and L.H.

On the basis of this evidence, Detective Nauman arrested Herndon on September 24, 2013. Detective Nauman read Herndon his *Miranda* rights. Herndon, who has a "low average" IQ, indicated that he understood he had the right to remain silent. After stating that "a lot of people are telling me not to talk without a lawyer," he confessed to multiple instances of sexual misconduct with A.P.

The State charged Herndon with multiple counts of sexual assault on a child and lewdness with a child under the age of fourteen with respect to A.H., L.H., and A.P. Following a seven-day trial, the jury found Herndon guilty of all charges. The district court sentenced Herndon to multiple concurrent and consecutive terms totaling life with the possibility of parole after 90 years.

## DISCUSSION

On appeal, Herndon argues that (1) his confession to Detective Nauman was wrongfully admitted; (2) the district court wrongfully excluded testimony by Herndon's defense expert that A.H. and L.H.'s allegations had been "suggested"; (3) the district court wrongfully prevented cross-examination of A.H. and L.H. to establish that their allegations against Dempsey were significantly more detailed; (4) the district court erred in excluding Herndon's proposed expert on false confessions; (5) Detective Nauman impermissibly testified regarding A.H.'s demeanor during interviews; and (6) that cumulative error warrants dismissal. For the reasons stated below, we conclude that these claims lack merit, and affirm the judgment of conviction.

 

*The district court did not err in admitting Herndon's confession*

Herndon first argues that the district court erred in admitting the video of his confession to Detective Newman. In this, Herndon contends that he failed to make a valid waiver of his *Miranda* rights; Detective Nauman failed to stop the interview after he invoked his right to counsel; and that under the totality of the circumstances, his confession was coerced. Herndon did not raise any of these claims at trial, nor did he file a pretrial motion to suppress. Therefore, we review these claims for plain error. *See Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003).

*Herndon waived his Miranda rights*

Generally, a defendant's statements during a police interrogation are inadmissible unless the defendant makes a knowing and voluntary waiver of his rights under *Miranda v Arizona*, 384 U.S. 436 (1966). *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010). "A waiver is voluntary if, under the totality of the circumstances, the confession was the product of a free and deliberate choice . . . ." *Mendoza v. State*, 122 Nev. 267, 276, 130 P.3d 176, 181-82 (2006) (internal quotation marks omitted). "A written or oral statement of waiver of the right to remain silent is not invariably necessary. Rather, a waiver may be inferred from the actions and words of the person interrogated." *Id.*

In this case, the videotaped interview between Herndon and Detective Nauman indicates that Detective Nauman clearly read Herndon his *Miranda* rights. He asked Herndon if he understood what the warning meant. Herndon clearly indicated that he understood that he had the right to "remain silent." After this exchange, Detective Nauman waited for several moments before continuing his questioning. Herndon willingly

responded to Detective Nauman's questions. Under the totality of the circumstances, we conclude that Herndon's actions constitute a valid waiver of his rights pursuant to *Miranda*. Accordingly, Herndon failed to demonstrate plain error with respect to this claim.

*Herndon's mention of an attorney was not an unequivocal invocation of the right to counsel*

Once a suspect invokes the right to counsel under *Miranda*, all interrogation must cease until counsel has been made available. *Kaczmarek v. State*, 120 Nev. 314, 328-29, 91 P.3d 16, 26 (2004) (citing *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981)). To sufficiently invoke counsel pursuant to *Miranda*, "the suspect must unambiguously request counsel" to the extent "that a reasonable police officer [under] the circumstances would understand the statement to be a request for an attorney." *Harte v. State*, 116 Nev. 1054, 1066, 13 P.3d 420, 428 (2000) (quoting *Davis v. United States*, 512 U.S 452, 459 (1994)). "'[A] reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel' is not sufficient." *Id.* (quoting *Davis*, 512 U.S. at 459).

Approximately five minutes after Detective Nauman read Herndon his *Miranda* rights, Herndon stated that "[a] lot of people are telling me not to talk without a lawyer present." Under *Davis*, Herndon's statement does not amount to an "unequivocal" invocation of the right to counsel. Accordingly, we conclude that Herndon's argument regarding his invocation of his right to counsel lacks merit.

*Herndon's confession was voluntary*

Independent from the requirements of *Miranda*, the Due Process Clause of the Fourteenth Amendment requires that any confession

must be voluntary: a product of "rational intellect and a free will." *Passama v. State*, 103 Nev. 212, 213-1, 735 P.2d 321, 322 (1987) (quoting *Blackburn v. Alabama*, 361 U.S. 199, 208 (1960)). To determine the voluntariness of a confession, the court must examine the totality of the circumstances to determine whether the will of the defendant was "overborne." *Id.* at 214, 735 P.2d at 323. Factors to consider when determining the voluntariness of a confession include "the youth of the accused; his lack of education or his low intelligence; the lack of any advice of constitutional rights; the length of detention; the repeated and prolonged nature of questioning; and the use of physical punishment such as the deprivation of food or sleep." *Id.* (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).

Based on the totality of the circumstances in this case, we conclude that Herndon's confession was voluntary. While Herndon's IQ was found to be "low average," he successfully graduated from high school and served in the Navy. He indicated that he understood the nature of his *Miranda* rights, reiterating that he had the right to "remain silent." The interview lasted approximately an hour and twenty minutes, and took place during the middle of the afternoon. When Detective Nauman began to question Herndon about L.H., Herndon demonstrated the clear ability to articulate whether or not he wished to speak without a lawyer present. Under these circumstances, Herndon's assertion that his confession was involuntary lacks merit.

*Dr. O'Donohue's testimony was not impermissibly restricted*

Herndon next argues that the district court erred in refusing to allow Dr. O'Donohue, an expert in the field of psychology, to testify

regarding specific instances of suggestibility bias that he observed during Detective Nauman's interviews with the victims. We disagree.

It is well-settled law that it is the function of the jury "to assess the weight of evidence and determine the credibility of witnesses." *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992). "A witness may not vouch for the testimony of another or testify as to the truthfulness of another witness." *Perez v. State*, 129 Nev. 850, 861, 313 P.3d 862, 870 (2013). In the context of sexual abuse cases, this court has determined that an expert may testify regarding the effects of grooming, or whether a victim's behavior is consistent with abuse, but may not offer an opinion on whether the expert believes that a victim is telling the truth. *See e.g., id.* at 861-62, 313 P.3d at 870; *see also* NRS 50.345.

In this case, Dr. O'Donohue was permitted to testify extensively regarding suggestibility in children, and to explain how children are susceptible to suggestion. To allow Dr. O'Donohue to testify to specific instances in which he believed the victims' memories had been suggested would improperly invade the province of the jury to determine the credibility of the victim's testimony. Therefore, we conclude that the district court did not abuse its discretion in limiting Dr. O'Donohue's testimony. *See Chavez v. State*, 125 Nev. 328, 339, 213 P.3d 476, 484 (2009) (noting that this court reviews evidentiary rulings for an abuse of discretion).

*Cross-examination of L.H. and A.H. was not impermissibly restricted*

Herndon next argues that the district court improperly restricted the scope of cross-examination of A.H. and L.H.. More specifically, Herndon contends that he was prevented from fully cross-examining the girls regarding the fact that they were much more detailed

in their allegations against Dempsey than they were in their allegations against him.

Both this court and the United States Supreme Court have held that cross-examination is an inherent component of the Confrontation Clause. *Chavez*, 125 Nev. at 338, 213 P.3d at 483. Nonetheless, while the right to cross-examination is fundamental, it is not unlimited: "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Pantano v. State*, 122 Nev. 782, 790, 138 P.3d 477, 482 (2006) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). The requirements of the Confrontation Clause are "generally satisfied when the defense is given a full and fair opportunity to probe and expose. . . .infirmities." *Id.* (internal quotation marks omitted).

We conclude that the record demonstrates that Herndon was generally able to cross-examine A.H. and L.H. regarding the detail of their accusations. While the district court occasionally sustained objections to Herndon's questioning as redundant or speculative, the record overall demonstrates that Herndon received fair opportunity to expose any infirmities in the testimony of both A.H. and L.H. Notably, Herndon made the choice to stipulate to limit his cross-examination of L.H. in exchange for the admission by the State that L.H. had been more detailed in her other allegations against Dempsey. Therefore, we conclude that Herndon has failed to demonstrate any violation of his Sixth Amendment rights.

*The district court did not err in excluding Herndon's proposed expert*

Herndon next argues that the district court erred in excluding his proposed expert witness on false confessions, Dr. Deborah Davis.

To testify as an expert witness pursuant to NRS 50.275, a party must demonstrate that the proposed expert (1) is qualified in an area of scientific, technical, or specialized knowledge; (2) that the specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in dispute; and (3) that the expert's testimony will be limited to matters within the scope of his or her specialized knowledge. *Hallmark v. Eldridge*, 124 Nev. 492, 498, 189 P.3d 646, 650 (2008). With respect to the second requirement, this court has concluded that an opinion will assist the trier of fact if it is relevant and based on reliable methodology. *Id.* at 500, 189 P.3d at 651. In determining whether a methodology is reliable, the district court may consider whether the opinion is:

> (1) within a recognized field of expertise; (2) testable and has been tested; (3) published and subjected to peer review; (4) generally accepted in the scientific community (not always determinative); and (5) based more on particularized facts rather than assumption, conjecture, or generalization.

*Id.* at 500-501, 189 P.3d at 651-52 (citations omitted). The decision of a district court to admit or exclude expert testimony is reviewed for an abuse of discretion. *Higgs v. State*, 126 Nev. 1, 18, 222 P.3d 648, 659 (2010).

Prior to trial, the district court excluded the testimony of Dr. Davis on the basis that Herndon had failed to demonstrate that the testimony was helpful to the trier of fact. Herndon does not address the admissibility of Dr. Davis' opinion under *Hallmark*. Rather, he argues that the exclusion of Dr. Davis prevented him from presenting his theory of defense. Despite Herndon's arguments, we conclude that he may not subvert the requirements of *Hallmark* solely on the basis that Dr. Davis'

testimony was necessary to his defense. As noted by the district court, Dr. Davis' testimony was very general in nature. Dr. Davis was largely unfamiliar with the facts of Herndon's case and, beyond Herndon's low IQ, could not testify whether any specific risk factors for a false confession existed in this case. Therefore, we conclude that the district court did not abuse its discretion in excluding Dr. Davis' testimony. *See People v. Linton*, 302 P.3d 927, 956-57 (Cal. 2013).

*Detective Nauman did not impermissibly testify regarding A.H.'s demeanor*

Herndon next argues that Detective Nauman violated the best evidence rule when he testified regarding A.H.'s demeanor in her videotaped interview. To the extent Herndon argues that testimony describing a witness's demeanor relates to the best evidence rule, we note that the cases cited by Herndon to support his argument generally acknowledge that a witness who is present when events are recorded may testify regarding their personal recollection of the events. *See Gordon v. Commonwealth*, 916 S.W.2d 176, 179-80 (Ky. 1995). The best evidence rule is violated only when a person who was not an original witness attempts to interpret a recording. *Id.* Therefore, because Detective Nauman actually interviewed A.H., the district court did not err in allowing him to testify regarding his personal recollection of her demeanor.

*Cumulative error does not warrant dismissal*

Finally, Herndon argues that cumulative error warrants dismissal. Given our conclusion that Herndon's asserted errors lack merit, as well as the overwhelming evidence admitted against Herndon, including his own confessions, cumulative error does not warrant dismissal. *See Big Pond v. State*, 101 Nev. 1, 3, 692 P.2d 1288, 1289 (1985).

Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

cc:   Hon. Jerome M. Polaha, District Judge
      Law Office of Thomas L. Qualls, Ltd.
      Attorney General/Carson City
      Washoe County District Attorney
      Washoe District Court Clerk